JAMES DOYLE, administrator, *vs.* FITCHBURG RAILROAD COMPANY.

Middlesex.    March 9, 12, 1894. — June 29, 1894.

Present: FIELD, C. J., HOLMES, KNOWLTON, & MORTON, JJ.

*Personal Injuries — Negligence — Employee or Passenger within Meaning of Statute — Contract on Back of Railroad Ticket — Penal Statute.*

An employee of a railroad company was furnished by it each month with a ticket which contained more rides than were necessary in travelling to and from his work, and on which he was at liberty to ride whether in the service of the company or on his own private interests or pleasure. On the back of the ticket was a contract, one clause of which was as follows : " The person accepting this

————

free ticket thereby and in consideration thereof assumes all risk of accidents, and expressly agrees that the company is not a common carrier in respect to him, and shall not be liable under any circumstances, whether of negligence of its agents or otherwise, for injury to the person, or for loss or injury to the property, of the passenger using this ticket." While travelling on the ticket, on his own personal business, when his time was his own, he was killed in a collision caused by the gross negligence of an engineer in the employ of the company. *Held*, in an action by his administrator for damages under Pub. Sts. c. 112, § 212, that at the time of the injuries the plaintiff's intestate was not in the employment of the defendant within the meaning of the statute; that he was a passenger; and that the contract on the back of the ticket, in considering which the fact that the statute was a penal one was to be borne in mind, did not operate to release the defendant from liability.

A person may at one time be an employee when passing over a railroad, and at another time in passing over the same road be a passenger, though continuing all the while in a popular sense in the employment of the railroad company.

TORT, to recover damages for the death of the plaintiff's intestate Cornelius J. Doyle.

The declaration, which was in two counts, alleged that the action was brought by the plaintiff for his own benefit, as the father and next of kin of the intestate. The answer was a general denial, and that " the deceased was riding upon a train of the defendant under an express contract and agreement, by which he released the defendant from all liability on account of the alleged injuries."

At the trial in the Superior Court, without a jury, before *Dunbar*, J., there was evidence tending to show that Cornelius J. Doyle had been for about a year and a half employed as a clerk in the freight department of the defendant at Boston; that he was not employed for any stated period, but was at liberty to quit the employment at any time, and the defendant might discharge him at any time, without breach of contract; that his wages were fixed at a daily rate; that during his employment and at the time of the injury he lived with his father in Waltham, and usually went each morning and evening to and from Boston on the defendant's trains; that his work for the defendant closed each day at six o'clock and began in the morning at seven, and he performed no services for the defendant while riding on its trains, or outside the freight office; that after six o'clock on Saturday afternoons he had nothing more to do for the defendant until Monday morning, and the time in the interval was his; that there was a well known

and uniform custom of the defendant, known to Cornelius J. Doyle, to furnish to its employees who worked at Boston and lived at some other place on the line of the road a ticket in the form hereinafter set forth, without other compensation than that the person receiving the ticket should perform services for the defendant in accordance with the terms of his employment; that the rate of wages paid to the defendant's employees for a given class of work was the same, whether the employee resided at the place where he worked or at some other place on the line, and was furnished one of the aforesaid tickets; that the deceased was given one of these tickets when he began work, and during the whole time thereafter he had been furnished monthly with tickets of this character, and had used them for transportation between Boston and Waltham; that each ticket had sixty-two numbers to be punched, and was good for sixty-two rides during the month for which it was issued; and that it was conceded that a person holding one of these tickets might ride upon it whether he was going to and from his work or not, and whether or not he was at the time travelling in the service of the company, or solely for his own private interests or pleasure.

The face of this ticket read as follows:

"No. 464 Fitchburg Railroad. Employee's Monthly Ticket. (Not Transferable.) Pass C. J. Doyle, S. F. D., between Boston and Waltham, during the month of September, 1892, unless otherwise ordered. Not good unless countersigned by L. W. Bartlett. Sept. 1, 1892. John Adams, Gen'l Supt. Counter-signature, L. W. Bartlett."

On the back of the ticket were the following conditions:

"The person accepting this Free Ticket thereby and in consideration thereof assumes all risk of accidents, and expressly agrees that the company is not a common carrier in respect to him, and shall not be liable under any circumstances, whether of negligence of its agents or otherwise, for injury to the person, or for loss or injury to the property, of the passenger using this ticket."

On Saturday, September 10, 1892, the deceased left his work at the usual hour, intending to return as usual on the following Monday, and went on the defendant's train home to Waltham, arriving there before seven o'clock. In the evening, after supper, he went to Boston over the defendant's road solely on a

business or pleasure trip of his own, in no way connected with the defendant. At a little before a quarter past ten the same evening he entered a car of the defendant which left Boston at that hour, and took a seat, to be carried to Waltham. While so returning from this trip to Boston and riding on said car by virtue of said ticket, which was punched by the conductor, and while in the exercise of due care, another train of the defendant collided with the car in which the deceased was riding, and he was killed. The collision was caused by the gross negligence of an engineer in the employ of the defendant.

The defendant asked the judge to rule that upon this evidence the plaintiff could not recover. The judge refused so to rule, and ruled that there was sufficient evidence upon which to base a finding for the plaintiff, and made such finding accordingly; and the defendant alleged exceptions.

*G. A. Torrey*, for the defendant.

*G. L. Mayberry*, for the plaintiff.

MORTON, J. It is conceded that the death of the plaintiff's intestate was due to the gross negligence of an engineer in the employ of the defendant. The defence rests on two propositions, first, that the plaintiff's intestate was not a passenger, but an employee; secondly, if that is not so, that the defendant is not liable by reason of the conditions on the back of the ticket.

The statute is as follows: "If by reason of the negligence . . . of a corporation operating a railroad, . . . or of the unfitness or gross negligence or carelessness of its servants, . . . while engaged in its business, the life of a passenger, or of a person being in the exercise of due diligence and not a passenger or in the employment of such corporation, is lost, the corporation shall be punished," etc. Pub. Sts. c. 112, § 212. We do not think that at the time of the injury the plaintiff's intestate was "in the employment" of the defendant within the meaning of the statute. The defendant was not transporting him to or from the place of his daily labor pursuant to the arrangement which existed between them. It had no control or authority over him. He was not travelling on any service for it. His time was his own, and the defendant was not paying him for it, and he could use it as he saw fit, and he was passing over the defendant's road entirely for his own business or pleasure.

So long as he was working from day to day for the defendant, it might be said, in a popular sense, that he was in its employment. But we do not think that is the sense in which the words are used in the statute. Otherwise, if at any time, under any circumstances, passing over the railroad on a highway crossing on Sunday, for instance, on an errand to get a doctor for his father or a friend, he was injured by the gross negligence of the defendant's servants while engaged in its business, he would have no right of recovery. Nothing but the plainest language would warrant such a construction.

Was he a passenger? This question is a more difficult one, and there is force in the argument that to hold that he was a passenger would subject the defendant to a higher degree of care towards him when travelling on its road on his own pleasure than when travelling pursuant to some purpose connected with his service as an employee. Nevertheless, we think that he must be regarded as having been a passenger. It is clear that a person may at one time be an employee when passing over a railroad, and at another time in passing over the same road be a passenger, though continuing all the while, in a popular sense, in the employment of the railroad company. The ticket on which the plaintiff's intestate was riding was not a mere gratuity. It furnished part of the consideration by which he was induced to enter the employment of the defendant. A ticket was given to him each month, and it contained more rides than were necessary in travelling to and from his work. It is expressly conceded that persons holding these tickets could use them for their own private interest or pleasure; and we think the result must be that the plaintiff's intestate held towards the defendant the relation of a passenger at the time when he was injured. The cases to which the defendant has referred us are distinguishable from this. Those in this State were where the plaintiff was being transported in immediate connection with his employment. *Gillshannon* v. *Stony Brook Railroad*, 10 Cush. 228. *Seaver* v. *Boston & Maine Railroad*, 14 Gray, 466. *Gilman* v. *Eastern Railroad*, 10 Allen, 233. *O'Brien* v. *Boston & Albany Railroad*, 138 Mass. 387. In the cases in other States the circumstances under which the injuries occurred were such that the plaintiff could at the time fairly be said to be in the

employ of the defendant. *Russell* v. *Hudson River Railroad*, 17 N. Y. 134. *Vick* v. *New York Central & Hudson River Railroad*, 95 N. Y. 267. *Abend* v. *Terre Haute & Indianapolis Railway*, 17 Am. & Eng. Railroad Cas. 614. *International & Great Northern Railway* v. *Ryan*, 82 Tex. 565. *Kansas City, Memphis, & Birmingham Railroad* v. *Phillips*, 98 Ala. 159. *Parkinson Sugar Co.* v. *Riley*, 50 Kans. 401. *Evansville & Richmond Railroad* v. *Maddux*, 134 Ind. 571. *Manville* v. *Cleveland & Toledo Railroad*, 11 Ohio St. 417. *O'Connell* v. *Baltimore & Ohio Railroad*, 20 Md. 212. *Hutchinson* v. *York, Newcastle, & Berwick Railway*, 5 Exch. 343. *Tunney* v. *Midland Railway*, L. R. 1 C. P. 291.

In considering the contract on the back of the ticket, the fact that the statute is a penal one must also be borne in mind. The word "damages" is not used in a strictly legal sense. *Sackett* v. *Ruder*, 152 Mass. 397, 403. Damages are to be assessed not less and not more than a certain amount, and with reference to the degree of culpability of the corporation, its servants or agents. Originally the remedy was by indictment. Afterwards it was extended to an action of tort. St. 1871, c. 381, § 49. St. 1874, c. 372, § 163. St. 1881, c. 199, §§ 1, 6. But only one of the remedies can be pursued by the executor or administrator. And whether the amount is recovered by indictment or in an action of tort, it goes in either case to the widow and children and next of kin, and the executor or administrator has no interest in it. It is in substance a penalty given to the widow and children and next of kin, instead of to the Commonwealth, and as such the intestate could not release the defendant from liability for it. *Commonwealth* v. *Vermont & Massachusetts Railroad*, 108 Mass. 7, 12. *Commonwealth* v. *Boston & Lowell Railroad*, 134 Mass. 211. *Littlejohn* v. *Fitchburg Railroad*, 148 Mass. 478, 482. Save as a matter of convenience, the proceedings properly enough might be instituted by the widow and children or next of kin, if the statute permitted it, as is done in certain instances under the employers' liability act. St. 1887, c. 270, § 2. We have not found it necessary to consider whether a release of damages for causing the death of a human being is or is not justified by public policy, though a statute has been enacted recently which seems to authorize such a release by express

messengers.  St. 1894, c. 469, § 2.  Upon that, however, we express no opinion.  The result is that we are of opinion that the exceptions must be overruled, and it is

*So ordered.*