## AGNES C. HEADLINE v. GREAT NORTHERN RAILWAY COMPANY.[1]

December 23, 1910.

Nos. 16,768—(112).

**Master and servant — presumption as to law of foreign state.**

Plaintiff's intestate was a bridge carpenter employed by the defendant. The contract obligated the defendant to furnish him transportation to any place where it required him to work. While being so transported on a railway train of the defendant in Montana, there was a collision between his

[1]Reported in 128 N. W. 1115.

---

[Note] Conflict of laws as to action for death or bodily injury, see note in 56 L.R.A. 193.

Railroad employee being transported to or from work as passenger, see note in 31 L.R.A. 321; and note in 19 L.R.A.(N.S.) 717.

train and one of its freight trains, whereby he was killed. The collision was caused by the negligence of the engineer and conductor of the freight train. This action was brought in the district court of Minnesota to recover damages for his death. Verdict for the plaintiff, but judgment was ordered for defendant notwithstanding the verdict. *Held:*

1. It does not appear what the common law of Montana applicable to these facts is; hence it is presumed to be the same as that of this state, and by it the question of the defendant's liability must be determined.

2. A contract obligation rested upon the defendant to safely transport the deceased to the place where it required him to work. Whether he was strictly a passenger while being so transported is immaterial, for by virtue of its contract it was the absolute duty of the defendant to exercise due care to secure his safe transportation. The negligence of the engineer and the conductor was its negligence.

Action in the district court for Hennepin county by the administratrix of the estate of Newton L. Headline, deceased, to recover $25,000 for the death of her intestate.

The complaint set out the provisions of section 6486 of the General Statutes of Montana, giving a right of action for wrongful death to the heirs or personal representatives of a decedent, and specified the heirs of the intestate. The amended answer alleged that the death of decedent was due to the negligence of employees of defendant who were fellow servants of the intestate, and that the collision referred to in the opinion was not due to the negligence of defendant; that by the law of Montana decedent was a fellow servant of the employees whose negligence caused his death, and there could be no recovery by the heirs or personal representatives of such fellow servant against defendant; and that the cause of action did not survive to decedent's heirs or personal representatives. The reply was a general denial. The facts are stated in the opinion.

The case was tried before Simpson, J., and a jury which returned a verdict in favor of plaintiff for $8,500. From an order granting defendant's motion for judgment in its favor notwithstanding the verdict, plaintiff appealed. Reversed and remanded, with direction to the district court to cause judgment to be entered for plaintiff upon the verdict.

*William B. Anderson* and *Harlan P. Roberts,* for appellant.
*Brown, Albert & Guesmer,* for respondent.

START, C. J.

The plaintiff's intestate on December 28, 1908, was killed in the state of Montana by the alleged negligence of the defendant. This action was brought in the district court of the county of Hennepin to recover damages for his death. Verdict for the plaintiff in the sum of $8,500. The trial court, upon the defendant's blended motion for judgment or for a new trial, ordered judgment for it notwithstanding the verdict, upon the ground that by the laws of Montana the deceased was a fellow servant with the defendant's engineer and conductor, whose negligence caused his death, and hence no recovery could be had in Montana. The plaintiff appealed from the whole order.

The question here to be decided is whether the record shows, as a matter of law, that the deceased was killed solely by the negligence of his fellow servants. The here material facts are these:

Plaintiff's intestate was in the employ of the defendant as a carpenter; his work consisting of repairing bridges and other property belonging to the railroad company and situated on its line of road. He had charge of a crew of bridge carpenters, with headquarters at Great Falls, Montana. His duties required him to go from place to place whenever and wherever on its line the master carpenter should direct. As a part of the contract of employment, defendant agreed to transport him to and from the places where he was required to perform his work. At the time of his death he was proceeding from Hardy, a station on the road where he had been at work, to Dearborn Bridge, where he had been ordered to make certain repairs upon a bridge at that place. He was riding in a caboose attached to an extra work train, No. 322. Train No. 674, coming from the opposite direction, collided with the train upon which he was so riding, and he was thereby instantly killed. The collision was caused by the negligence of the engineer and conductor of train No. 674 in failing to obey the order of defendant, given through its train dispatcher, by which train No. 674 was directed to run one hour and

thirty minutes late, and to pass train No. 322 at the station of Mid Canyon. Had the order been obeyed by the employees in charge of train No. 674, no collision would have occurred. There was no fault or neglect on the part of those in charge of train No. 322, in which the deceased was riding, and neither train crew had any authority or control over the crew of the other train. The conductor and engineer of train No. 674 had never theretofore disobeyed an order of this character, and defendant had no reason to suppose that this one would not be obeyed. Deceased was employed in the state of Montana, and his death as stated occurred in that state.

The statutes of Montana and the decisions of its supreme court, so far as here relevant, by stipulation are to be referred to and used as if actually in evidence.

It is the contention of the defendant upon these facts that the relation between the deceased and the engineer and conductor was by the law of Montana that of fellow servants, for whose negligence it is not liable. If this be well founded, then, whatever may be the rule in this state as applied to the facts like those at bar, the order appealed from must be affirmed. If, however, no rule has been laid down by the courts of Montana applicable to the special facts of this case, we must then inquire what the common law of this state is; for in the absence of pleading or proof to the contrary it will be presumed that the common law of Montana is the same as in this state. Crandall v. Great Northern Ry. Co., 83 Minn. 190, 86 N. W. 10, 85 Am. St. 458; Engstrand v. Kleffman, 86 Minn. 403, 90 N. W. 1054, 91 Am. St. 359.

The fellow-servant doctrine has not been abolished by statute in Montana, and the first inquiry is: Has the supreme court of that state declared what is the common law of the state applicable to the facts of this case? Four decisions of the supreme court of Montana are cited, from which it is contended that the law of that state sustains the conclusion of the court below that the relation of fellow servants existed between the deceased and the engineer and conductor. We are unable to concur in this view of the Montana decisions. In none of the cases referred to were the facts at all like the facts in this case.

The question was not involved in Dillon v. Great Northern, 38 Mont. 485, 100 Pac. 960. That action was founded upon the statutes of the state, and it was conceded that the injured employee was a fellow servant with the employee whose negligence caused the injury. Goodwell v. Montana, 18 Mont. 293, 45 Pac. 210, involved facts wholly unlike those at bar. There the foreman of a gang of men was guilty of negligence in not giving proper warning of certain dangers incident to the work in the performance of which the foreman was engaged with the other men, and it was held that he was a fellow servant. Hastings v. Montana, 18 Mont. 493, 46 Pac. 264, was on its face substantially like the Goodwell case. In Mulligan v. Montana, 19 Mont. 135, 139, 47 Pac. 795, the fireman and engineer of the same train were fellow servants, a rule followed by practically all the courts.

The contention of counsel that these decisions clearly disclose the rule of Montana as applicable to the case at bar is founded in the main upon a course of reasoning having its principal support in the fact that in the opinions authorities are cited from the federal courts which apparently support the claim that the relation of fellow servants existed in the case at bar. Cases are cited by the Montana court which sustain plaintiff's contention that decedent and the crew in charge of train No. 674 were not fellow servants.

A careful consideration of the decisions cited leads us to the conclusion that we would not be justified in holding that the courts of Montana definitely settled the question here presented. It is true that such decisions indicate a purpose to follow the decisions of the federal supreme court as to the application of the fellow-servant doctrine; but there is no decisive indication as to which line of decisions of that tribunal should be followed. Whether the case of Baltimore & O. R. Co. v. Baugh, 149 U. S. 369, 376, 13 Sup. Ct. 914, 37 L. ed. 772, and allied cases shall be followed, or the case of Sante Fe Pac. R. Co. v. Holmes, 202 U. S. 438, 26 Sup. Ct. 676, 50 L. ed. 1094, and McCabe & Steen C. Co. v. Wilson, 209 U. S. 275, 28 Sup. Ct. 558, 52 L. ed. 788, as applied to facts of this case, cannot well be determined from the decisions so far rendered by the Montana court. In the Baugh case an engineer and his fireman were, and properly so,

held fellow servants. In the Holmes case a train dispatcher and an engineer who was guided in the performance of his duties by orders issued by the dispatcher, both being engaged in the service of operating trains, were held not fellow servants, and that the engineer could recover for the negligence of the dispatcher. In the McCabe case the department doctrine was recognized, and, if applied to facts like these at bar, would charge defendant with liability. For a bridge carpenter and an engineer of a train are clearly in separate departments of railroad work, so that, if the Montana court should adopt that rule, the liability of the defendant would be clear.

But in the absence of some clear and positive decision of that court based upon facts analogous to those here presented the conclusion must be that the rule controlling the question is unsettled in that state. The presumption, then, is that the common law of Montana here applicable is the same as that of this state, and we have this question: Is the defendant, upon the facts, relieved from liability for the death of the deceased on the alleged ground that he was a fellow servant of the engineer and conductor? That is, did the defendant owe him any personal duty in the premises?

The fellow servant rule has been accepted and enforced by this court, and its qualification, adopted by many other courts, to the effect that employees in independent departments are not fellow servants, has been rejected. This is settled by a long line of decisions of this court, among others the following: Foster v. Minnesota Central Ry. Co., 14 Minn. 277 (360) ; Brown v. Minneapolis & St. L. Ry. Co., 31 Minn. 553, 18 N. W. 834.

The great diversity of judicial opinion as to the reason of the rule indicates that it does not rest on any substantial basis of reason or justice, otherwise there would be unanimity, and that the true reason for its adoption was an economic one, in order to foster industries by relieving the master from liability to any of his employees for personal injuries due to the negligence of any other of his employees in the same industry. The injustice of making this exception to the rule of respondeat superior is obvious, thus compelling those who receive the least from an industry to assume its hazards to life and limb from the negligence of those over whom they have

no control and in whose selection they have no voice. The rule, however, is the law of this state, as evidenced by the decisions of this court, and by the rule of stare decisis we are bound to enforce it in good faith.

Nevertheless reason and justice forbid that the rule should be extended or confounded with the rule as to the absolute duties of the master, as illustrated by the pioneer case of Drymala v. Thompson, 26 Minn. 40, 1 N. W. 255, and later cases. So in this case the question of the defendant's liability depends largely upon whether it owed the deceased any personal or absolute duty as master by virtue of the contract of employment between them. The question must be considered from this viewpoint. Bjorklund v. Gray, 106 Minn. 42, 118 N. W. 59. The here material part of such contract was to the effect that the defendant should furnish him transportation from his headquarters or from any place where he happened to be at work as bridge carpenter foreman to any place the defendant required him to work for it. When he was killed, he was being so transported by the defendant on one of its railway trains, pursuant to the terms of the contract, to a place where he had been ordered to take charge of the repair of a bridge.

The contention of counsel for the defendant is to the effect that it owed the deceased no personal duty, as he was not a passenger, and that the negligence which caused his death was strictly that of his fellow servants. This contention is urged in an able and exhaustive brief, citing and analyzing numerous authorities, all of which have received attentive consideration. We find ourselves unable to concur in the conclusion that the defendant owed the deceased no personal duty. The cases cited by counsel sustain the general proposition that an employee of a carrier traveling to or from his work in its cars free from charge, as stipulated for in the contract of service, is not a passenger, but merely an employee. Seaver v. Boston, 14 Gray (Mass.) 467; Vick v. New York, 95 N. Y. 267, 47 Am. Rep. 36; Elliot v. Chicago, 5 Dak. 523, 41 N. W. 758, 3 L.R.A. 363.

In the case of McNulty v. Pennsylvania, 182 Pa. St. 479, 38 Atl. 524, 38 L.R.A. 376, 61 Am. St. 721, it was held that an employee of a railway company, who was carried to and from his work

on a train in consideration of a reduction in the price of his wages, was a passenger. In the case of Peterson v. Seattle, 23 Wash. 615, 63 Pac. 539, 65 Pac. 543, 53 L.R.A. 586, the defendant was employed by the street car company at $1.50 per day and free transportation to and from his work. He was injured by the negligence of the defendant's motorman while riding home from his work on defendant's street car. It was held that he was not a fellow servant of the motorman, but that the defendant was liable for the motorman's negligence. See also Doyle v. Fitchburg, 162 Mass. 66, 37 N. E. 770, 25 L.R.A. 157, 44 Am. St. 335, 166 Mass. 492, 44 N. E. 611, 33 L.R.A. 844, 55 Am. St. 417; Transit v. Venable, 105 Tenn. 460, 58 S. W. 861; Santa Fe Pacific R. Co. v. Holmes, 202 U. S. 438, 26 Sup. Ct. 676, 50 L. ed. 1094, and McCabe & Steen C. Co. v. Wilson, supra.

While the facts in the cases we have cited are different in some respects from those of the case at bar, yet the controlling principle seems to be the same, which is that one who directly causes an injury to another may be his fellow servant in the broadest sense of that term, but not such within the rule which exempts the master from liability. Wood, Master & Servant, §§ 435, 436.

Where a master reserves to himself the performance of a particular act, he cannot avoid liability for its nonperformance by delegating the duty to another. One employs another, and agrees to furnish him tools and instrumentalities, to another he delegates the duty of procuring the tools and instrumentalities. If a defective instrumentality is selected and furnished by this last servant, and injury results to the servant using the same, the master is liable. Again, one is employed by a master who undertakes to furnish him with a safe place to perform his duties, to provide the place another is employed by the same master. If such second employee negligently performs his duty, and his fellow servant is injured thereby, the master is liable.

In both of these instances the injured servant and the negligent servant are coemployees, in that they are engaged in a common employment, working with a common purpose, towards a common result, and, rejecting the departmental theory and the difference in

113 M.—6.

grades, we still find the master liable because the negligent servant is performing a duty of which he cannot divest himself. In all of these instances the contract of hiring might have been different. The servant might have undertaken to select his own instrumentalities, or have undertaken to secure the safety of the place upon which he was to work; but where the master undertakes that duty he at once assumes the burden of the proper performance. So here the defendant, having undertaken to transport the deceased from place to place, undertook to transport him safely. It, not he, selected the manner of such transportation, and undertook to make such manner safe. The contract on the part of the defendant in this case was not simply to permit the deceased to ride in its cars free to the places where he was to work; but it was an absolute contract obligation, based upon a valuable consideration, to transport the deceased, by such instrumentalities or agencies as it might select, to the place where he was to work. Whether the deceased was, while being so transported, strictly a passenger, is immaterial; for it is clear from the terms of the contract that it was the personal or absolute duty of the defendant to exercise due care to secure his safe transportation. It could not delegate this duty, so as to relieve itself from liability for a breach thereof.

We accordingly hold that the negligence of the engineer and conductor, which caused the collision whereby the deceased was killed, was the defendant's negligence, and that the trial court erred in ordering judgment for it notwithstanding the verdict.

Ordered that the order appealed from be, and it is, reversed, and the case remanded, with direction to the district court, to cause judgment to be entered for the plaintiff upon the verdict.