# SOPHIA MORTENSON v. HOTEL NICOLLET COMPANY.[1]

May 24, 1912.

Nos.17,673—(213).

**Vice principal — question for jury.**

Where, in a laundry operated by steam power applied to the washers by

1 Reported in 136 N. W. 306.

---

[Note] Vice principalship as determined with reference to character of act causing injury, see elaborate note in 54 L.R.A. 37.

means of shafting, belts, and pulleys, the repair of these when broken or rendered ineffective is delegated by the master to a servant, it becomes a question of fact for the jury whether such servant is performing an absolute duty of the master, or a mere detail of the work.

### Liability of master for servant's negligence.

If such servant is engaged in the performance of the master's absolute duties in making the repairs, the master is not only responsible for the manner in which such repairs are made, but also for such negligence of the servant while so attempting to do the work which renders the place of work for another servant unsafe, to the latter's injury.

### Charge to jury — admission of evidence.

Exceptions to the charge of the court, and refusal to give requested instructions, and also rulings on reception of evidence, examined, and found to present no reversible error.

Action in the district court for Hennepin county to recover $15,000 for personal injuries. The answer alleged negligence on the part of plaintiff. The case was tried before Hale, J., and a jury which returned a verdict in favor of plaintiff for $6,000. From an order denying defendant's motion for judgment notwithstanding the verdict or for a new trial, it appealed. Affirmed.

*Brown & Guesmer,* for appellant.

*Latham, Pidgeon & Larson,* for respondent.

HOLT, J.

The plaintiff recovered a verdict of $6,000 against the defendant for an injury to her arm claimed to have been received through defendant's negligence while in its service. From an order denying its blended motion for judgment notwithstanding the verdict, and in case of a denial thereof, then for a new trial, defendant appeals.

It appears that the defendant is conducting a hotel, and has a laundry equipped with washing machines operated by steam power. One of these machines is a large stationary cylinder, inside of which is a revolving cylinder in which the articles to be washed are placed. The outside cylinder has an opening something more than five feet in length and over eighteen inches wide, covered

with a tin lid; the highest part of the opening being near the top of the cylinder. The inside cylinder has an opening some sixteen inches wide and five feet long. This opening has a heavy cover hung on two hinges. When the clothes are to be placed in or taken out of the washer, the inside cylinder must be revolved so that its opening is right against the opening of the outside cylinder, then the two lids are thrown back on their hinges. The washer is worked by means of two belts passing over a pulley on a shaft attached to the machine and over pulleys on the main shaft above; one belt being straight and the other crossed. These belts are, by a worm gear, alternately shifted on and off the power pulley from the loose pulleys on which they are run so that the inside cylinder revolves alternately three times one way, then three times. the other. When the machine was stopped, both belts would be on the loose pulleys. It was started and stopped by means of a lever back of the pulleys. This lever described a semicircle in so doing.

Plaintiff, twenty-four years old, had worked in defendant's laundry about nine months prior to August 29, 1910, the day she was injured, but not at this washer except one day some time before. On this day, twenty-ninth of August, she was put to work on this machine. One of the belts broke, or became unserviceable, and one of the managers of the defendant directed the chief engineer to repair it,. and in his presence the engineer sent Chris Severson, his assistant, to do the work. It is claimed by plaintiff that, while she was bending over taking out clothes from the washer, Severson negligently started the washer, thereby throwing the heavy cover down upon her left arm, and pulling her up against the upper edge of the outside cylinder. The defendant accounts for the injuries by contending that plaintiff had placed the heavy cover up so straight that a slight movement of the machinery by her in taking out the clothes. caused the cover to fall. And that, even if the accident happened as plaintiff claims, it was caused by the negligence of a fellow servant, who was not then performing an absolute duty of the employer,. but was assisting in the details of the work carried on.

The complaint is based on the theory that the belt of the washer broke, rendering repairs necessary. It is alleged that the appli-

ances for operating the machine had become worn, out of repair, and unsuitable for operating the same, and that the defendant with its agents and servants were working at repairing these appliances and attempting to make the same suitable for the work; that defendant in so making these repairs and trying the same made the place plaintiff was working in highly unsafe, as defendant knew, and, without warning her of the danger, so carelessly and negligently performed said work of repairing and trying said machinery and appliances that the machine was started while plaintiff was so exposed, causing her arm to be caught and so severely injured that it is practically paralyzed and useless.

It must be considered as established by the verdict of the jury that the cover fell because the machine was started by Severson. There is evidence warranting this conclusion in the record. Plaintiff and two other witnesses testified that she was jerked up from the floor when her arm was caught. This could not have been the case if the cover merely fell down when the machine was standing still. Plaintiff also said that Severson, at the time she was hurt, stated: "I don't know, Sophia, what I was thinking about when I started the machine" Neither can the finding that plaintiff was not guilty of contributory negligence be assailed from the mere fact that while she was taking out the clothes she saw Severson raise the lever. She was only a few feet from him, and he could plainly see her position, and, as a matter of law, it cannot be said that she should have anticipated that he would throw the lever clear over and so start the machine. So that the decision of this case must rest upon the question whether or not Severson was in the discharge of his master's non-delegable duty when the washer was started.

It is perhaps well to bear in mind that plaintiff was employed in a laundry where the washers, mangles, and other appliances were operated with belts, shafting, and pulleys of a more or less complicated nature, the power all coming from a steam engine located in another part of the building, and that the employees in the laundry did not undertake to repair or keep in order the machines they operated. The chief engineer did this, and Chris Severson assisted in oiling, adjusting belts, and other repairs as directed

by the engineer. Their duties, except as to keeping the machinery in order and furnishing the power, had no connection with the laundry work. Of course, under our decisions, the fact that the servants work in different departments does not affect the fellow servant rule, but it should be given some consideration in determining the scope of the master's absolute duties in a given case.

The Chief Justice in Headline v. Great Northern Ry. Co. 113 Minn. 74, 128 N. W. 1115, after referring to the fact that some courts have held that employees in independent departments are not fellow servants, and that the rule does not rest on reason or justice, hence the diversity of judicial opinion, observes that: "The injustice of making this exception to the rule of respondeat superior is obvious, thus compelling those who receive the least from an industry to assume its hazards to life and limb from the negligence of those over whom they have no control and in whose selection they have no voice. The rule, however, is the law of this state, as evidenced by the decisions of this court, and by the rule of stare decisis we are bound to enforce it in good faith. Nevertheless, reason and justice forbid that the rule should be extended, or confounded with the rule as to the absolute duties of the master." So that we are not inclined to extend the fellow servant doctrine by the decision in this case or any other.

It is immaterial in this case whether Chris Severson was assistant engineer or a mere helper to the engineer. The one in charge, Mr. Beard, part owner of the hotel, directed the engineer to repair the broken belt, and at once, in Mr. Beard's presence, as we read the record, Severson was delegated to do it. While it is true that, when a belt which transmits power to a machine is broken, no danger is created by the machine as long as it stands still, it is also true that, when belts running at high speed do break, dangerous conditions are often created to those working around the machines. So that it cannot be said as a matter of law that keeping belts on machinery in repair is not an absolute duty of the master, even though they frequently need attention. If in doing this work the master or whomsoever he sets to perform it in the performance negligently creates a danger to another servant the master may be responsible.

118 M.—3.

It will not do to say that no liability is created, unless the act caus-
ing the injury was necessary in the doing of the work.   In a certain
sense all negligence is unnecessary and independent of the act to·
be performed with due care.   As a fellow servant of plaintiff Sever-
son was not required to start or stop the washer.   She did that.
If it appeared necessary at all to Severson to throw the washer into
gear, it did so in the performance of the duty delegated to him to·
repair the machine.   If it was the duty of the master in making the
repair to make it so that the machine became reasonably safe when
repaired, then it would seem to follow that the servant delegated
to repair was performing the absolute duty of the master, and if,
in performing it, the place of work of plaintiff was thereby rendered
unsafe, the master becomes responsible.   At least we consider it a
fair question for the jury to determine whether repairing the belt
which was broken was keeping the machinery in a reasonably safe·
condition, thus the master's absolute duty that Severson was dele-
gated to do, and whether he, when starting the machinery, was in an
attempted performance of that duty.

   In an exhaustive and well-arranged brief, appellant's counsel
have reviewed the decisions of this state bearing upon the fellow
servant doctrine as affected by the absolute duties of the master
when performed by a servant.   And these propositions, among others,.
are laid down: While the rank of the servant performing the master's
absolute duties is immaterial (Lindvall v. Woods, 41 Minn. 212,.
42 N. W. 1020, 4 L.R.A. 793), it is of significant importance, how-
ever, when the foreman or superintendent is performing the same·
(Carlson v. Northwestern Tel. Exch. Co. 63 Minn. 428, 65 N. W.
914) ; if a servant to whom a nondelegable duty has not been assigned
renders the place of work for a fellow servant unsafe, the master is
not responsible (Perras v. A. Booth & Co. 82 Minn. 191, 84 N. W.
739, 85 N. W. 179; Berneche v. Hilliard, 101 Minn. 366, 112 N.
W. 392); and one who is engaged in performing the ordinary
duties of the work carried on is a fellow servant even if he be a
foreman (Doerr v. Daily News Pub. Co. ·97 Minn. 248, 106 N.·
W. 1044).

   But we cannot concur in the conclusion counsel draws from the·

decisions of this state that the master is responsible for a servant's discharge of the absolute duties delegated only when the servant's injurious act or omission constitutes (a) a failure to perform that absolute duty; or (b) an incomplete result in the performance thereof; or (c) an imperfect result in the performance thereof. We think this must be added to counsel's conclusions: That, when the servant is performing an absolute duty of the master, he stands in the master's shoes, so that, if while so engaged, through negligence a place otherwise safe is rendered unsafe to a fellow servant resulting in injury, the master may be held liable, as hereinbefore indicated.

The court's charge is criticized because the proposition that the master owes a duty to see that the place of work "is not rendered unsafe without giving reasonable warning thereof to such employees as might be imperiled thereby" was not qualified by stating that this applied only to acts of a fellow servant while performing the nondelegable duties of a master. The master is not bound to see that no servant in the discharge of his duties as such creates a place of danger for a fellow servant. But the court was speaking of the absolute duties of the master, and, so far as the statement went, the law was correctly given. If the defendant considered that the jury might not apply the principle properly without further amplification or qualification, some request so to do ought to have been made to the court.

It is further contended that the following statement used by the trial court in speaking of a master's absolute duties is erroneous: "Among these is the duty of the master to provide his employees with a reasonably safe place in which to work, and to see that it is not rendered unsafe without giving reasonable warning thereof to such employee as might be imperiled thereby. The duty of the master is to warn the servant of impending danger caused by an independent act performed for the master's business, and of perils resulting from the fact that a safe place becomes dangerous through the work there carried on." This is substantially the same language used by this court in Anderson v. Pittsburg Coal Co. 108 Minn. 455, 122 N. W. 794, 26 L.R.A.(N.S,) 624, and we take it to be a correct statement of the law if it be understood that the court meant to con-

vey by the phrase "an independent act performed for the master's business," a nondelegable act. In the connection in which the language was used we think this is what the jury was given to understand.

The court refused to give defendant's third request to the jury. In the request occur these two sentences: "A servant may become a vice principal by being placed in exclusive charge of the work. There is no evidence in this case that Severson was so placed in exclusive charge of the work, and hence he would not be a vice principal on that ground." The evidence is conclusive that Severson was placed in exclusive charge of making the repair in question. If counsel meant exclusive charge of the whole establishment, the request would have been perhaps proper and applicable. But the way the two sentences quoted were incorporated in the request it became ambiguous and misleading, to say the least. The fourth request refused does not appear applicable to the theory or evidence of the case, and the fifth, relating to plaintiff's contributory negligence, was substantially given in the charge.

Some exceptions taken on the trial to rulings on reception of evidence do not seem to merit consideration. For instance, counsel for plaintiff asked her if she would have put her arm in to take out the clothes if she had known that Severson was going to start the washer. The court overruled the defendant's objection that the question called for a conclusion. The question might as well have been omitted, or the objection sustained. But we fail to see any prejudice. It goes without saying that no sane person would have stuck the arm in if he knew that some one would start the machine, so that by this question and answer, and similar questions objected to by defendant, the jury gained no information not already possessed as common knowledge. The assignments of error based on the theory that Severson was discharging the mere detail duties of the common employment, and that his act in starting the washer was not one for which defendant was responsible need not be further discussed, because, as above stated, the jury were warranted in finding that he was then engaged in the master's absolute duty.

We conclude that the learned trial court correctly disposed of defendant's motion, and the order is affirmed.