# CASES DETERMINED

IN THE

# SUPREME COURT OF NEBRASKA

AT

## SEPTEMBER TERM, 1908.

STATE OF NEBRASKA, APPELLANT, V. DAVID T. MARTYN, SR., APPELLEE.

FILED SEPTEMBER 16, 1908. No. 15,620.

1. Carriers: REGULATION OF TRANSPORTATION. A contract between a railroad company and a physician, by the terms of which he is to receive for professional services to be rendered by him for the company, at its request, the sum of $25 a month and an annual pass over its lines of road, where the physician does not spend a major portion of his time in the employment of the company, is prohibited by the provisions of sections 10664, 10665, Ann. St. 1907, and the acceptance and use of such a pass by the physician renders him guilty of a violation of those sections.

2. Constitutional Law: CARRIERS: POLICE POWER. The provisions of ch. 93, laws 1907, commonly called the "Anti-Pass Law," prohibiting the issuance, acceptance and use of free transportation, are a proper and reasonable exercise of the police power of the state, and the power of the legislature to regulate the business of common carriers by preventing unjust discriminations, and are not unconstitutional.

APPEAL from the district court for Platte county: GEORGE H. THOMAS, JUDGE. *Exceptions sustained.*

*William T. Thompson, Attorney General, John J. Sullivan* and *W. N. Hensley,* for appellant.

*Edson Rich, W. M. Cornelius* and *J. E. Rait, contra.*

18       (225)

BARNES, C. J.

At the March, A. D. 1908, term of the district court for Platte county, an information was filed against the defendant, David T. Martyn, Sr., which, omitting the title and formal parts, was, in substance, as follows: That on or about the 15th day of January, 1908, David T. Martyn, Sr., then and there being, did unlawfully accept from the Union Pacific Railroad Company, a corporation owning and operating lines of railroad in the state of Nebraska, a free pass for travel on and over all the lines of railroad owned and operated by the said Union Pacific Railroad Company in said state; and did then and there unlawfully use said pass for the free transportation of himself as a passenger on and over the said lines of railroad in said county and state; the said David T. Martyn, Sr., not being then and there an officer, agent or *bona fide* employee, the major portion of whose time is or was devoted to the service of said railroad company. The information in conclusion also stated facts sufficient to show that the defendant was not included within any of the exceptions contained in chapter 93 of the laws of 1907, commonly called the "Anti-Pass Law."

To this information the defendant entered a plea of not guilty. In due time he was placed on trial, and the cause was finally submitted on the contract under which the pass in question was issued and an agreed statement of facts: It was provided, among other things, by said contract that the defendant should furnish all necessary surgical and medical treatment to the sick and injured employees of the Union Pacific Railroad Company free of charge to said employees, and also render such services to passengers and others, for whom the company should request the same, between Schuyler and Silver Creek, Nebraska, for which he was to receive an annual pass on the Nebraska division of said railroad, together with trip passes upon other divisions thereof, and $25 a month during his employment, which it was provided could be can-

celed and terminated at any time for cause by the said company. By the agreed statement of facts it was conceded, among other things, that the defendant was and is not employed a major portion of his time in the service of the said railroad company. On motion of the defendant's counsel the court directed the jury to return a verdict of not guilty, which was accordingly done, the defendant was discharged, and the cause was thereupon dismissed. To all of which the state entered its exceptions, and has brought the case here for review under the provisions of sections 483 and 515 of the criminal code.

It is contended by the state that the record shows beyond any question or chance of reasonable contention that defendant was guilty of a plain violation of our statutes prohibiting the acceptance and use of free transportation. On the other hand, defendant contends first, that a pass issued in good faith to a regular practicing physician in return for services performed and to be performed by him in the treatment of persons injured on or about the railroad issuing it is not a free pass within the meaning of the act of March 30, 1907, prohibiting the giving, acceptance and use of passes, or free transportation of passengers over any and all lines of railroad within this state; second, that the act violates section 3, art. I of the constitution of this state, which provides that "no person shall be deprived of life, liberty or property, without due process of law"; and, third, that the act violates section 16, art. I of the constitution, which provides that "no bill of attainder, *ex post facto* law, or law impairing the obligation of contracts, or making any irrevocable grant of special privileges or immunities shall be passed."

To determine these questions it is not only proper, but necessary, for us to consider all of the several provisions of our statutes relating to, or in any manner regulating, the business of common carriers within this state; and we should also take into consideration the evil sought to be corrected by the several legislative acts on that subject, together with the means adopted to accomplish that

purpose. It is a matter of common knowledge that free passes first originated in favors granted to personal friends of railroad officials, and that this courtesy was gradually extended to public officers. This in itself, and in its inception, was not considered harmful or detrimental to the public welfare; but long prior to the passage of the act in question the giving, acceptance and use of the free pass had become an intolerable evil, a menace to good government, and a stumbling block in the way of securing needed legislation, as well as a burden to the railroad companies themselves. With this situation confronting the legislative assembly of 1907, that body wisely determined to put an end to the whole matter, and so it first enacted chapter 90, laws 1907, commonly called the ·'Railway Commission Act," which was approved by the governor, and became a law on the 27th day of March of that year. By section 14 of the act, it was provided: "If any railway company or common carrier subject to the provisions of this act, directly or indirectly, through or by its agents, officers or employees, by any special rate, rebate, drawback, or other device, shall charge, demand, collect, or receive from any person, firm, or corporation, a greater or less compensation for any service rendered or to be rendered by it than it charges, demands, collects, or receives from any other person, firm, or corporation for doing a like and contemporaneous service, the same shall constitute an unjust discrimination, which is hereby forbidden and declared to be unlawful." It seems perfectly clear that the giving of free transportation to any person whomsoever was thereby made unlawful; and, while it was not made a penal offense by that section to receive such transportation, yet the giving of it was made a crime punishable by a fine of not less than $500, nor more than $1,000. That the provisions of that section are broad enough to cover the transaction in question in this case, and render it at least unlawful, there can be no doubt, for the transportation of a passenger by a railroad company over its line of road is a service performed by it

for such passenger; and the Union Pacific Railroad Company by giving the defendant the pass in question thus charged, demanded, collected and received a different charge from the defendant than it charged, demanded, collected or received from other persons or passengers for a like service. That this rendered the transaction unlawful there can be no question. To the operation of this law there was no exception, and the servants and employees of the railroad company could not be transported free even while carrying out the terms of their employment. It was therefore apparent that the law, as it then stood, was too drastic in its provisions, and that there should be enacted some needed exceptions to its operation, and so the anti-pass law above mentioned was passed, approved by the governor, and took effect on the 30th day of March, 1907 (Ann. St. 1907, secs. 10664, 10665). By this act it was made a penal offense, not only for a railroad company to give, but for any person to receive and use free transportation who was not especially excepted from its operation by the language of the act itself. As we understand the question before us, it is not claimed by the defendant that he falls within any of those exceptions, and, while the defendant was an employee of the Union Pacific Railroad Company, yet it is frankly conceded that he did not, and does not, spend a major portion of his time in the service of that company. With the facts above stated before us, we come now to determine the foregoing questions.

The defendant's first contention is that his pass is not a free pass within the meaning of the statutes above referred to. To support this proposition his counsel cite *Dempsey v. New York C. & H. R. R. Co.,* 146 N. Y. 290. In that case one Dempsey, a railroad policeman appointed by the governor of the state of New York pursuant to statute, had entered into a contract with the defendant railroad to protect its property, and be ready for such service at all times on demand; and it was also agreed that, if he would procure his appointment to the office of

railroad policeman, the company would give him $75 a
month for performing the duties of that office, together
with an annual pass, which was required to enable him to
perform his official duties.  Upon these facts it was held
that the pass contracted for was not a free pass within
the meaning of the constitution of New York, which pro-
hibited the issuance of free passes to the public officers of
that state.    It thus appears that the rule announced
therein has no application to the case at bar.

Our attention is next directed to the opinion of the at-
torney general of the state of Wisconsin, wherein he de-
cided that a contract between the assistant attorney gen-
eral and a railway company, by which that officer was to
act as attorney for the company in consideration of an
annual pass, was not a violation of the anti-pass law of
that state.    An examination of that opinion, however,
discloses that it was based on *Dempsey v. New York C.
& H. R. R. Co., supra,* and therefore has no application to
the facts here in question, or the law by which our de-
cision must be governed.  Again, the obvious impropriety
of the employment of the assistant law officer of the state
by a railroad company, and the inconsistency of his peti-
tion in accepting such employment, affords sufficient rea-
son to justify us in declining to follow that opinion.

Finally, on this branch of the case, counsel present
*Smith v. New York C. & H. R. R. Co.,* 24 N. Y. 222, and
*New York C. R. Co. v. Lockwood,* 84 U. S. 357.  We find,
upon an examination of those cases, that the point de-
cided by each of them was that a shipper, traveling on a
drover's pass issued to enable him to take care of his live
stock *en route,* was not a gratuitous passenger in such a
sense as to relieve the carrier from liability for negli-
gently causing his death.   Just how those cases can aid
us in determining the questions under consideration we
are not now advised, and so far have been unable to as-
certain.   On the other hand, we find that in *Marshall v.
Nashville R. & L. Co.,* 118 Tenn. 254, 9 L. R. A. (N. S.)
1249, the nature of a free pass issued by a railroad com-

pany to the chief of police of the city of Nashville was determined, and it was there said: "One of the assignments of error in this case is that the pass was not a mere gratuity, but that it was given for a valuable consideration; and in this connection it is said that the deceased was a member of the police force of Nashville, being chief of detectives, and that to this class of persons the company, as a rule, issued passes, which were based upon a valuable consideration. In other words, this pass was given, like others of its class, to encourage and to induce members of the police force, like the intestate, to ride upon the cars, and to be frequently about them, because their presence tended to preserve peace and good order for the passengers and to protect the interest and operation of the road. We are of opinion that such a motive on the part of the road cannot be considered a valuable consideration, because the expected benefits are too remote, contingent and uncertain to be so classed; and the pass must, therefore, be considered and treated, as it purports to be, a mere gratuity or compliment."

An examination of the contract under which the pass in question was issued to the defendant discloses, as above stated, that it could be abrogated or annulled at any time for cause, and the impression is created thereby and by the whole record that for the contingent services which the defendant was to render to the Union Pacific Railroad Company, if requested, he was to receive and accept $25 a month, and that the pass in question by which he was permitted to ride upon the trains of that company over its Nebraska division, free of charge, was a mere gratuity, and was so considered by both the defendant and the railroad company until after the passage of the act in question herein. It seems quite evident that any expected benefits by reason thereof which might be received by the railroad company were so remote and contingent as to constitute no consideration therefor. If the defendant's pass is not a free pass within the meaning of the act, which is the basis of this prosecution, then the statute itself is as use-

less as the vermiform appendix. If a free pass can be lawfully issued by a railroad company and used by any person as an employee who does not spend a major portion of his time in the service of the company, the whole purpose of the law is thwarted and destroyed, for under the pretext of employment any service performed for the company, however slight and trifling, would entitle the one performing it to free transportation, and the law would thus be rendered wholly nugatory. We therefore decline to adopt the construction contended for, and are of the opinion that the defendant's pass is just what it purports to be, a free pass, and its issuance, acceptance and use was a plain violation of the statute, which is the basis of this prosecution.

We come now to dispose of the defendant's second and third contentions, which strike at the constitutionality of the law involved in this controversy. These questions will be considered together, for what may be said as to one of them applies with equal force to the other. It is asserted that the anti-pass law is unconstitutional because it impairs the obligations of the contract existing between the defendant and the railroad company, and deprives defendant of his property without due process of law. To correctly decide this question, we should construe all of the provisions of our constitution and statutes which relate to or have any bearing thereon together. By section 7, art. XI of the constitution, it is provided: "The legislature shall pass laws to correct abuses and prevent unjust discrimination and extortion in all charges of express, telegraph and railroad companies in this state and enforce such laws by adequate penalties." It thus appears that the power to regulate intrastate commerce and prevent unjust discriminations is not only granted to the legislative assembly by the constitution, but it is thereby made a duty which the law making body is commanded to perform. It is also well settled that the internal commerce of a state, that is, the commerce wholly confined to and carried on within the limits of a single

state, is as much under state control as foreign or interstate commerce is under the control of the general government. *Sands v. Manistee River Improvement Co.*, 123 U. S. 288; *Gibbons v. Ogden*, 9 Wheat. (U. S.) 1; *Moore v. American Transportation Co.*, 24 How. (U. S.) 1; *Covington & Cincinnati Bridge Co. v. Kentucky*, 154 U. S. 204; *Geer v. Connecticut*, 161 U. S. 519. The exercise of this power necessarily includes the right to interfere with contract and property rights, so far, at least, as may be necessary to prevent extortion and discrimination. From even a cursory examination of the several acts of our legislature on this subject, it is quite apparent that the contract under consideration was and is discriminatory in its nature. We find that like contracts have been frequently declared to be so. The statutes of North Carolina upon this subject are the same as our own, and in *M'Neill v. Durham & C. R. Co.*, 132 N. Car. 510, it was held that a contract between a railroad company and the publisher of a newspaper by which he was to publish the timetables of the company and receive a pass over its line of railroad, as compensation therefor, was invalid and was an illegal discrimination. In the opinion in that case we find the following: "Subject to the liberal exceptions just recited, the general assembly deemed that free transportation or any other discrimination was so much against public policy that a violation of the statute was made punishable with a fine 'not less than one thousand dollars and not exceeding five thousand dollars' for each offense. Nothing could be more clearly a discrimination than the ground upon which the plaintiff asked for and received free passage on this occasion, to wit: That for the year previous he had advertised the schedule of the defendant company in his paper and had received therefor a free pass over its line for the previous year, and that this contract had been renewed for the year then current. It does not appear what was the value of the advertising done, charging for the space at the same rates as would be charged others, but, let it be what it may, it could not

amount exactly, 'neither more nor less,' to the value of a free pass to travel *ad libitum* an unstipulated number of miles over the defendant's road. Besides, it was an illegal discrimination to sell the plaintiff transportation on credit and not payable in money." This decision not only meets with our approval, but we find that the federal courts in construing like provisions of the interstate commerce law have reached a similar conclusion. *United States v. Wells-Fargo Express Co.*, 161 Fed. 606.

Again, it may be said, if the contract for the pass in the case at bar ever had any validity, the provisions of our constitution above quoted entered into and became a part of it at its inception. And its terms and obligations were at all times subject to the power of the legislature to pass laws "to correct abuses and prevent unjust discriminations." Therefore, when the law in question took effect, the contract became illegal, and its obligations gave way and were suspended, for it cannot be said that it was of such a character as to suspend the provisions of the constitution, and the statute passed in response to the command of that instrument.

It may be further stated that our antipass law is simply a police regulation, adopted in pursuance to the mandates of the supreme law, and therefore cannot be said to be unconstitutional. In Tiedeman, Limitations of Police Power, sec. 93, it is well said: "Whenever the business is itself a privilege or franchise, not enjoyed by all alike, or the business is materially benefited by the gift by the state of some special privileges to be enjoyed in connection with it, the business ceases to be strictly private, and becomes a *quasi* public business, and to that extent may be subjected to police regulation." That such is the nature of the business of a common carrier there can be no doubt. In *Bullard v. Northern P. R. Co.*, 11 L. R. A. 246, (10 Mont. 168), it was held, that "existing contracts for special freight rates or rebates from regular tariff rates, which had been made with railroad companies subject to the interstate commerce act, became illegal when that

act took effect, and were after that time incapable of enforcement." The contract in question herein is without doubt subject to the same rule. We are therefore of opinion that the issuance of the defendant's annual pass and its acceptance and use by him was a plain violation of the statute.

We are therefore constrained to hold that the district court erred in directing the jury to find the defendant not guilty and discharging him from further prosecution. For the foregoing reasons, the exceptions of the state are

SUSTAINED.