H. F. SCHULTZ, Plaintiff and Appellant, .v. C. J. PARKER, Sheriff, Appellee.

Legislative enactments: DEFINITION OF TERMS: FREE PASS. The legislature has power to incorporate in an enactment itself a definition of some of the terms used therein, when within the fair range of definition. Thus in the statute prohibiting railway companies from giving free passes, it was competent for the legislature to define therein the term free pass, as any transportation for any other consideration than money at a rate open to all persons alike; as the same is in no sense expository legislation, or retrospective and *ex post facto.*

Same: It was proper for the legislature to declare by interpretation of the term free pass, as used in the statute, that it was not so

used in its literal and absolute sense, but rather in a sense sufficiently broad as to give effectiveness to the legislation, by including within the prohibition the giving of transportation for an inadequate and discriminatory consideration, either in money or services.

**Same:**  STATUTE:  TITLE.  A legislative act entitled ''An Act to prohibit carriers of passengers from issuing, furnishing or giving free tickets, free passes, free transportation ,or discriminating reduced rates,'' except to certain described employees; to prohibit the acceptance or use thereof, except by such persons, and providing a penalty for a violation of the Act, was sufficient to indicate that the prohibition of the Act went beyond the free pass, in its technical meaning, and included any transportation issued for any discriminatory consideration.

**Same:**  The title of a legislative Act is sufficient if it furnishes a key to the subject matter of the Act:  So that the terms ''free pass'' and ''discriminating reduced rate'' are so closely related that when used in the title, either is sufficient to indicate a person who has purchased transportation at a nominal, or greatly disproportionate rate, where the consideration is indefinite or evasive.

**Constitutional law:**  PROHIBITION OF FREE PASS:  CLASS LEGISLATION. The legislature has power under the constitution to deal with the pass evil, in the interest of the public welfare; and that power cannot be abridged by the fact that in its exercise the right of contract between an employer and employee may be incidentally interfered with:  Nor will the fact that the law for that purpose exempts certain persons from its operation render it unconstitutional.

**Same:**  APPEAL:  REVIEWABLE QUESTIONS.  In habeas corpus proceedings for the discharge of one arrested for violating the anti-pass law, tried upon an agreed statement of facts in which no question of burden of proof was raised, and defendant did not testify, the provisions of the law relating to privilege from testifying and exemption from prosecution were not involved, and therefore not reviewable on appeal.

**Same:**  CONFLICT OF STATUTES.  The Act of Congress prohibiting free transportation has relation to interstate transportation, ,while the state statute does not purport to apply to that subject and is therefore not void for conflict with the federal statute.

**Same:**  STATUTE:  PARTIAL INVALIDITY.  Although the provisions of the state statute relating to testimony and the burden of proof were

unconstitutional, it would not invalidate the whole Act; as the same are not essential to the integrity of the Act as a whole.

**Same:** VALIDITY OF STATUTE. The anti-pass statute when fairly construed is not an interference with congressional jurisdiction over the subject of interstate commerce, and hence is not void on that ground.

*Appeal from Sac District Court.*—HON. Z. A. CHURCH, Judge

FRIDAY, DECEMBER 13, 1912.

THIS is a habeas corpus proceeding. The petition was filed and the writ obtained in October, 1907. It was brought against the defendant as sheriff, who held the plaintiff under arrest for violation of the provisions of chapter 112, Laws 32d General Assembly. The plaintiff challenged the validity of such legislative enactment, and therefore the validity of his arrest. Upon issues properly joined the trial was had. The trial court dismissed the petition, and the plaintiff has appealed.—*Affirmed.*

*Kenyon, Kelleher & O'Connor* and *B. I. Salinger,* for appellant.

*H. W. Byers,* Attorney General; *A. L. Whitney,* County Attorney, and *Chas. S. Wilcox,* for appellee.

EVANS, J.—The case was tried below upon an agreed statement of facts. The issues were so framed and the facts so stated as to enable the plaintiff to challenge the constitutionality of the anti-pass law, being chapter 112 of the Laws 32d General Assembly. This chapter now appears in the Code Supplement as sections 2157-f, 2157-g, 2157-h, 2157-i, and 2157-j.

For convenience of reference, we quote section 1 and a portion of section 2 thereof, as follows:

Section 1. No common carrier of passengers shall, directly or indirectly, issue, furnish or give any free ticket, free pass or free transportation for the carriage or passage of any person within this state except as permitted in the second section hereof. Nor shall any common carrier, in the sale of tickets for transportation at reduced rates, discriminate between persons purchasing the same, except the persons described in said sections. Nor shall any person accept or use any free ticket, free pass or free transportation except the persons described in said section. The words 'free ticket,' 'free pass,' 'free transportation' as used in this act shall include any ticket, pass, contract, permit or transportation issued, furnished or given to any person, by any common carrier of passengers, for carriage or passage for any other consideration than money, paid in the usual way at the rate, fare or charge open to all who desire to purchase.

Sec. 2. The persons to whom free tickets, free passes, free transportation and discriminating reduced rates may be issued, furnished, or given are the following, to-wit: (a) the officers, agents, employees, attorneys, physicians, and surgeons, of such common carriers of passengers whose chief and principal occupation is to render service to common carriers of passengers.

This law went into effect on July 4, 1907. It is agreed that on July 9, 1907, the plaintiff received from the Illinois Central Railroad Company an annual pass good on all lines of the railroad within and without the state of Iowa. This pass was issued in pursuance of a contract entered into on the same date whereby the plaintiff as an attorney at law, residing at Storm Lake, Iowa, agreed to act as "local attorney" for such company, and to perform certain usual services for the railroad company pertaining to litigation then existing, or which might thereafter arise, in Buena Vista county. Such contemplated services were occasional and casual rather than usual or general, and might be much or little according to the contingencies of the future. The annual pass in question was to be received in full compensation for such prospective services. It is agreed, also, that the agreement for the services of plaintiff did not contemplate that he should become an attorney for the railroad company within the meaning of sec-

tion 2 of the act above set forth, and that the plaintiff was not within the excepted class therein specified. The plaintiff traveled upon said pass from point to point within the state of Iowa upon the lines of the railroad company upon business which was not in furtherance of any interest of the railroad company or in pursuance of its employment; and he paid no transportation therefor except the presentation of such pass.

In his petition for the writ, the plaintiff challenged the validity of the act referred to as being violative of the Constitution of the United States in the following respects:. (1) The said act deprives the defendant of the right to make a contract in a lawful way, and for a lawful purpose. (2) It is class legislation, and not equal or uniform in its provisions. (3) It deprives the defendant of the equal protection of the laws. (4) It abridges the privileges and immunities of the defendant as a citizen of the United States. (5) It deprives the defendant of his property and liberty, without due process of the law. (6) It is repugnant to and inconsistent with section 1 of the act of Congress to regulate commerce approved February 4, 1887, as amended by the act approved June 29, 1906. (7) It is repugnant to and inconsistent with section 22 of the act of Congress to regulate commerce, approved February 4, 1887, as amended March 2, 1889, and February 8, 1895, and as amended June 29, 1906. (8) It is repugnant to the fourteenth amendment to the Constitution of the United States. (9) It is repugnant to the fifth amendment to the Constitution of the United States. (10) It is repugnant to section 2. art. 4, of the Constitution of the United States. (11) It is repugnant to section 8 of article 1, which provides that Congress shall have power "to regulate commerce with foreign nations and among the several states and with Indian tribes."

He also challenged the same as violative of the Constitution of Iowa in the following respects: (1) It deprives the defendant of the right to make a lawful contract in a lawful way for a lawful purpose. (2) It is class legislation, and not equal or uniform in its provisions. (3) It deprives the defend-

ant of the equal protection of the laws.   (4) It abridges the privileges and immunities of the defendant as a citizen of the United States.  (5) It deprives him of his property and liberty without due process of the law.   (6) It is repugnant to section 1, art. 1, of the Bill of Rights as found in the Constitution of the state of Iowa.   (7) It is repugnant to and in violation of section 6 of article 1 of the Constitution of the state of Iowa. (8) It is repugnant to and in violation of section 9 of article 1 of the Constitution of the state of Iowa. (9) The said act is in violation of and repugnant to section 29 of article 3 of the Constitution of the state of Iowa, which provides: Every act shall embrace but one subject, and matters properly connected therewith; which subject shall be expressed in the title.

The plaintiff has filed here a brief presenting scores of points and hundreds of authorities.   We shall not be able to consider them all in detail within the limits at our command. The brief, however, presents a succinct résumé of the substance of the points especially emphasized, and we avail ourselves of it as presenting his general line of argument as follows:

Part 1.   There is a vital difference between a 'free pass' and one obtained for valuable consideration other than money. While the Iowa act directs the Iowa Legislature to ignore the distinction, it prohibits nothing but 'free' transportation; and Schulz has no such transportation.   And by reason of this distinction the title of the act is fatally defective, because it advised that it is a prohibition of free passes, without indicating that the term is made to include such as are not free.

Part 2.   A statute which, in effect, declares it to be a crime for a railroad carrier to pay wages except in money, or its employee to accept wages unless paid in money, which compels self-incrimination and puts the burden on the accused to prove himself innocent, and which makes criminality depend upon whether the pass holder has it for his main and chief occupation to give services to some common carrier or carriers of passengers, and which permits passes to some who are and some who are not employees of such corporations, though they do not meet such occupation test, is void for being in conflict with both the federal and state Constitutions, and with elementary natural justice, because (a) it denies

due process of law and the equal protection of the laws; (b) it does this by arbitrarily interfering with the right to make contracts; (c) by enacting arbitrary and oppressive class legislation; (d) by compelling the accused to incriminate himself, and especially by putting on him the burden of proving himself innocent, it takes from him elementary rights inherent in the social compact, in natural justice, trial in accord with common law, and rights that existed before the United States adopted a Constitution; (e) punishing one for disobeying a definition forced by the Legislature upon the courts is not due process because, in effect, it tries the accused before the Legislature without any of the sanctioned forms of procedure and without notice and hearing.

Part 3. At all events, this statute is an invasion of the province of Congress to regulate interstate commerce, because, Congress having declared what passes such common carriers may issue, the state may neither conflict with nor complement that declaration.

Part 4. The unconstitutional parts so manifestly induced the passage of the act that it is void *in toto*.

I. It is the first contention of plaintiff in argument that his pass was not a "free pass;" that the prohibition of the statute applies only to a "free pass," and not to a pass supported by any consideration. He argues, therefore, that his use of the pass in the manner heretofore indicated was not a violation of the statute. He urges that the last sentence of section 1 which purports to define "free pass" is "expository," and therefore ineffective, and that the court must construe the enactment without reference to such expository declaration. Putting the proposition in this way, no constitutional question is raised, and the plaintiff is therefore quite outside the record made in the trial court. Passing this, however, it is argued that the Legislature had no power to put a construction upon the terms used in the enactment, and that such attempted construction was an encroachment upon the power of the court. Expository legislation as the term has usually been applied has reference to those acts of Legislatures which purport to put a construction upon past

1. LEGISLATIVE ENACTMENTS: definition of terms: free pass.

enactments without making any amendments thereto. Such legislation has been quite uniformly condemned. *Richardson v. Fitsgerald,* 132 Iowa, 255. If such legislation were sustained, its effect would necessarily be retrospective and *ex post facto.* The act before us is not one of that kind. We have here an attempt of the Legislature to incorporate in the enactment itself a definition of some of the terms used therein. That this may be done within the fair range of definition is well settled, and the appellant does not claim otherwise. *State v. Schlenker,* 112 Iowa, 642; *Jones v. Surprise,* 64 N. H. 243 (9 Atl. 384); Endlich on Interpretation of Statutes, section 365; Sutherland on Statutory Construction, section 402. In *Richardson v. Fitzgerald,* 132 Iowa, 255, an act was under consideration relating to a past enactment. It was capable of being construed as expository legislation. This court, however, construed it as amendatory of such past enactment. The plaintiff recognizes that this case, if followed, is fatal to his contentions at this point, and asks that it be overruled. The case goes further, doubtless, than many of the previous authorities. But the holding is nevertheless a very rational one. It serves to give effect to the manifest intention of the Legislature, even though such intent was badly expressed. A contrary holding would have been consistent with respectable authorities. We are impressed, however, that some of such authorities indulge in undue *finesse* at this point.

If acts of the Legislature are to be overturned or ignored by the judiciary as unconstitutional, it should be for substance of reason, and not for nicety of distinction in the use of terms.

It is further argued at this point that a "free pass" is a free pass, and that it is incapable of any other definition. The authorities cited by the appellant are not quite agreed as to what constitutes a free pass. In *State v. Martyn,* 82 Neb. 225 (117 N. W. 719, 23 L. R. A. (N. S.) 217, 17 Ann. Cas. 659), it was held that, where the services of a surgeon were rendered for $25 a month and

2. SAME.

an annual pass, the provision for the pass was a mere evasion
of the statute, and was a gratuity within the meaning of the
statute. If one were to pay $1 for an annual pass over the
line of a great railway system, it would not be a free pass in
a literal sense as contended for by plaintiff. But a court
might well construe it as such as being within the spirit of the
statute; otherwise the statute would fall by the mere weight
of its own words. It could be evaded with impunity in num-
berless ways, whereby its letter could be obeyed and its spirit
violated. If for the nominal consideration of $1 we should
substitute the substantial consideration of $100, the problem
would still remain. Such a substantial consideration would
conform to the letter of the act with less appearance of evasion,
but it would still leave the act ineffective for want of com-
pliance with its manifest spirit. This is perhaps a sufficient
illustration to show the reasonableness of applying legislative
interpretation to the terms used in the act. By this inter-
pretation it was announced that the word "free" was not used
in a literal and absolute sense, but that it was used in a sense
sufficiently broad to give effectiveness to the legislation. If
the spirit of the statute could be deemed broader than its
literal terms, used in a strictly technical sense, then it was
appropriate by definition to broaden the literal term to the
larger dimension. And that is all that we have here. The
purpose and effect of the definition is to make known by
appropriate expression the scope of the statute both in letter
and spirit, and to render coincident such letter and spirit.
Otherwise the law is slain by its own letter, and furnishes an
apt illustration of the Scripture saying: "The letter killeth
but the spirit giveth life." 2 Cor. iii, 6. An exhaustive cita-
tion and review of authorities may be found in a note to *State
v. Martyn*, 82 Neb. 225 (117 N. W. 719, 23 L. R. A. [N. S.]
217, 17 Ann. Cas. 659).

II. It is urged that the title of the act in question did
not comply with the requirements of section 29 of article 3

of the Constitution of Iowa, viz., "Every act shall embrace

3. SAME: stat- but one subject and matters properly con-
ute: title.     nected therewith, which subject shall be ex-
pressed in the title." The title of the act is as follows: "An
act to prohibit common carriers of passengers from issuing,
furnishing or giving free tickets, free passes, free transporta-
tion or discriminating reduced rates, except to certain
described persons: to prohibit the acceptance or use of such
free tickets, free passes, free transportation or discriminating
reduced rates by any except certain described persons; pro-
viding a penalty for the violation of the act, also for annual
reports and for the repeal of chapter ninety (90), Laws of
the Thirty-First General Assembly." The argument of appel-
lant is that there is nothing in the title of the act to indicate
that the prohibitions of the act went beyond the "free pass,"
or that passes paid for by services were included therein.
If we are correct in our analysis of the statute in the pre-
ceding division hereof, then it quite disposes of appellant's.
contention at this point also. The title indicates the pro-
hibition of "free transportation" and "discriminating re-
duced rates." The act responds to the "subject" announced in
the title "and matters properly connected therewith." Appel-
lant argues that he has neither a free pass nor a discriminat-
ing rate, and that his case is therefore not covered by the
title. Assuming that by his promise to serve the railroad
company he gave a valuable consideration for the pass in
question, it yet remained that the extent of transportation or
mileage which he could receive under his pass need bear no
proportion to the amount of services which he might render.
The extent of his transportation was not limited by the extent
of his services. If one must pay a fixed mileage rate for all
transportation, and another is permitted to purchase trans-
portation to an unlimited extent without any reference to rate,
for the mere promise of a limited and indefinite service, it
is a tender characterization to call it "discrimination." The

act does prohibit "discriminating reduced rates," and the title does so indicate.

But the appellant argues that by the last sentence of section 1 of the act a pass furnished for any other consideration than money was defined to be a "free pass," and that the title of the act gave no notice of such definition.

He argues, also, that, even though his pass might by judicial interpretation be properly declared a discrimination, yet the act has defined it otherwise and as a free pass. A "free pass" and a "discriminating reduced rate"

4. SAME.

are not so far apart or so distinct in their essential nature as appellant's argument places them. Indeed, they are so close together and occupy so much common ground that they often present no line of demarcation. One is a form of the other. If one patron purchase 1,000 miles of transportation for $20, and another patron purchase 2,000 miles for $20, we have a concrete case. Analyzing it, we may say that the second patron purchased his transportation at half rates. That would be a "discriminating reduced rate." Or we may say that the second patron paid the regular rate for 1,000 miles, and paid nothing for the other thousand, that would be "free transportation." Such a concrete case doubtless would be more naturally classified as discrimination rather than free transportation. But when the consideration paid is nominal or greatly disproportionate, or is indefinite or evasive, then such a concrete case may well be claimed by either class. We have frequently held that the title of an act, though confined to general terms, is sufficient if it answers as a key to the subject matter of the act. *Sisson v. Board of Supervisors,* 128 Iowa, 442; *Hubbell v. Higgins,* 148 Iowa, 36; *State v. Fairmont Creamery Co.,* 153 Iowa 702; *Bereshein v. Arnd,* 117 Iowa, 83; *Cook v. Marshall County,* 119 Iowa, 384. To the same effect, *Lynch v. Chase,* 55 Kan. 367 (40 Pac. 666); *Nebraska Loan Company v. Perkins,* 61 Neb. 254 (85 N. W. 67); *Johnson v. Harrison,* 47 Minn, 575 (50 N. W. 923, 28 Am.

St. Rep. 382). The subject is so fully discussed in our decisions above cited that we will not repeat the discussion here.

III. It is urged that the act complained of is an interference with the liberty of contract as between employer and employee and that it is therefore class legislation. It is also urged that section 2 of the act which excepts certain classes from its operation is arbitrary and unreasonable and therefore discriminatory. If the main purpose and scope of the act in question were to set a limitation upon the liberty of contract as between employer and employee or as between railway corporations as particular employers and their employees, appellant's arguments at this point would have more application to the case.

5. CONSTITUTIONAL LAW: prohibition of free pass: class legislation.

The real question at this point is whether the Legislature has adequate power in a constitutional sense to deal with the pass evil. That it was an evil of great magnitude none will deny. It permeated the departments of government. It threatened the purity of legislation and the integrity of administration. It was growing with acceleration. Even those who had nurtured it, and those who fed upon it, were suing, helpless, for release. Such being the evil universally recognized, was the Legislature constitutionally helpless to deal with it? We cannot think so. We think the Legislature had power under the Constitution to enact adequate legislation for the general public welfare on this subject. The liberties abridged and the classifications adopted and now complained of were purely incidental to such exercise of power. The exercise of the power was clearly reasonable, and the abridgment of private rights was manifestly unavoidable, and no ground of complaint is available to the appellant at this point. This question, including the question of classification, is fully discussed in our previous cases above cited; the latest cases being *Hubbell v. Higgins, supra,* and *State v. Fairmont Creamery Co., supra.* No useful purpose can be served by repeating the discussion contained in such previous cases,

and it will be adopted here by this reference. To the same effect is *Louisville & N. Ry. Co. v. Mottley*, 219 U. S. 467 (31 Sup. Ct. 265, 55 L. Ed. 297, 34 L. R. A. [N. S.] 671).

IV. The appellant complains of section 3 of the act which is as follows: "No person within the purview of this act shall be privileged from testifying in relation to anything herein prohibited, but no person having testified shall be liable to any prosecution or punishment for any offense concerning which he was required to give his testimony." The complaint is made on the ground that it compels a defendant to become a witness against himself. Further complaint is made of a portion of the act, in that it lays a certain burden of proof upon the defendant. These points are argued extensively. They are not fairly involved in this case. We will not go beyond the facts of the case in search of constitutional questions. This case was tried upon an agreed statement of facts. No question of burden of proof appears. Nor did appellant testify in the case.

It is also argued that the act in question was an interference with an act of Congress upon the same subject. The act of Congress known as the Hepburn Act (Act June 29, 1906, case 3591, (34 Stat. 584, U. S. Comp. St. Supp. 1911, p. 1284) forbids common carriers engaged in interstate commerce to issue directly or indirectly any interstate free pass, except to its attorneys, etc. The act of Congress only purports to apply to interstate transportation. Our legislative act does not in terms purport to deal with interstate transportation. The information under which the appellant is prosecuted charged him with using his pass only between points within the state of Iowa. It appears from the agreed statement of facts that he did so use it. It is true that it also appears from such agreed statement that the appellant used his pass between a point in the state of Iowa and the city of Chicago, but such fact adds nothing to the case. No charge of violation of the law is based

6. Same: appeal: reviewable questions.

7. Same: conflict of statutes.

upon it in the information. We think, therefore, that no question of conflict of jurisdiction is presented.

Assuming, however, that the questions here considered are not directly involved in this prosecution, appellant urges that these questions do go nevertheless to the integrity of the statute as a whole. It is argued that, if any one of these provisions should be held invalid, it would carry down with it the entire act.

8. SAME: statutes: partial invalidity.

As to the provisions concerning testimony and the burden of proof, it seems quite clear that these are not essential to the integrity of the act as a whole, and that, if they were eliminated by judicial condemnation, the act in other respects would not be affected. *Hubbell v. Higgins, supra.*

As to the alleged interference with the jurisdiction of Congress, this question does not arise naturally upon the face of the act as written. At this point appellant first contends for a particular construction of the act, and then contends that the act as so construed is void *in toto* as an interference with the jurisdiction of Congress. Construing the act for the purpose of attack, appellant says that it is sufficiently comprehensive in its terms as to be applicable to all commerce, including interstate commerce. Granting the possibility of such construction as a matter of verbal emphasis, is it the necessary construction? Is it the natural and reasonable construction? If the act is so written that it must be so construed, then it may be conceded that it is wholly invalid. But we are clear that the construction thus contended for is not the fair and natural construction of the act. Only a searching eye and an ingenious argument could bring it to the surface. The rule is well settled that legislative acts will not be nullified by mere construction. If the act will fairly bear a construction which will save its validity, a construction will not be adopted which will destroy it. We think the act in question is not amenable to the attack upon it at this point.

9. SAME: validity of statute.

The foregoing points considered comprise the principal

lines of attack made upon the validity of the act. They are dealt with in the argument under many subdivisions, and their many-sided phases are discussed under many points. The argument is instructive and interesting, but we cannot follow it into further detail.

If it were legally necessary to sustain its contentions, little, if any, legislation could ever clear the hurdles thus set up.

The petition for the writ was properly dismissed, and the judgment·below is accordingly *Affirmed.*