JOHN KINNEY ET AL., ADMINISTRATORS OF CHARLES W. METTLER, DECEASED, v. THE CENTRAL RAILROAD COMPANY OF NEW JERSEY.

1. A contract that in consideration of a free passage, a passenger will assume the risk of injuries to his person from the negligence of the servants of the railroad company, is valid in law; and,
2. A passenger who receives knowingly a free ticket, with an endorsement of such contract upon it, will be bound by the terms of such contract, and cannot recover for injuries from such negligence.

---

Error to the Supreme Court.

Kinney et al., adm'rs of Mettler, v. Central R. R. Co. of N. J.

For the facts in this case and the proceedings and opinion of the court below, see 3 *Vroom* 467.

To reverse the judgment founded on this opinion this writ of error was brought.

The case was argued by—

*J. F. Dumont* and *J. F. Randolph*, for plaintiffs in error.

*J. G. Shipman* and *B. Williamson*, for defendants.

VAN SYCKEL, J.   The special verdict in this case finds that the decedent's death was caused by the negligence of the agents of the defendants, while the decedent was riding upon the defendants' railroad on a free pass, with the agreement that in consideration of its receipt, he assumed all risk of accident, and that the company should not be liable under any circumstances, whether of negligence by their agents or otherwise, for any injury to his person or loss or injury to his property while using the ticket.

The action is brought by the personal representatives of the deceased, under the act of March 3d, 1848,[*] entitled "An act to provide for the recovery of damages in cases where the death of a person is caused by wrongful act, neglect or default," which is framed in some respects after what is called Lord Campbell's act (9 *and* 10 *Victoria, ch.* 93,) and the single question to be determined is, whether the express agreement exempts the company from responsibility for the neglect of its agents.   The contract is clear in its expression, made between competent parties, and unless it contravenes some settled rule of law, or is contrary to public policy, it fully dispenses the company from liability.

Whether common carriers can, by general notices, or even by express agreement, impose upon their employés the risks incident to carriage, is not involved necessarily in this discussion.   Common carriers, as a general rule, are bound to

[*] *Rev., p.* 294.

Kinney et al., adm'rs of Mettler, v. Central R. R. Co. of N. J.

accept employment in the ordinary course of their business, and insure the safe delivery of all goods entrusted to them, and therefore their claim to evade, by special contract, the loss which considerations of public policy have imposed on them, would readily be met by objections not applicable to the case in hand. I fully agree with the able opinion of the Supreme Court, that the contract now under consideration, was not made with the defendants in their character of common carriers. The deceased did not choose to bargain with them in their general employment, in which they hold themselves ready to transport passengers for hire, but asked and accepted from them a gratuity. To hold otherwise would be to say that a man, from the mere fact that his occupation is that of a common carrier, cannot, as to an individual transaction, be a gratuitous bailee.

The company, therefore, in asking immunity against loss in this case, does not seek to escape from any part of its common law liability.

The objection that this contract is inconsistent with good morals and sound policy has been considered in all the cases of this kind which have been submitted to judicial criticism. It differs widely from the question whether a person should be allowed to stipulate against loss from his own negligence. Reasons of great cogency could be started against the validity of such a contract, which can have no pertinency to this issue.

The doctrine of *respondeat superior* has not been adopted because there is any equity in imposing the loss upon the superior, but in order to induce the principal to use greater care in the selection, and to exercise increased watchfulness over the acts and conduct of his agents.

While it may with great force be urged, that the policy which dictates this rule would be infringed by permitting a railroad company, in the pursuit of its ordinary business, to contract for immunity from such loss, it is difficult to perceive how this consideration can apply to a transaction without their ordinary employment, to a mere gratuity or accom-

modation, which concerns none but the immediate parties to it.

Why should the passenger who solicits a free pass be permitted to escape the liability to loss which he voluntarily assumes in order to secure the accommodation? It is certainly a breach of good faith in the passenger, to attempt to fix the carrier with responsibility in such case.

The suggestion that the tendency of such exemption would be to increase peril to public travel, by withdrawing one of the motives which leads the carrier to use the highest degree of care, will not bear examination.

How can it be said that non-liability for damage to an occasional free passenger might induce, in the slightest respect, a want of vigilance, which would most probably inflict untold loss upon the company?

The damage in this case resulted from the fault, not of the directors of the company, but from that of its subordinate agents, and no satisfactory reason has been given why the contract, which the parties themselves made, should be restrained of its full operation.

Instances in which an exemption which cannot be distinguished in principle from this, is the subject matter of legal contract, are afforded in the familiar cases of pre-insurance.

Upon examination of the authorities, it will be found that most of the adjudged cases sustain the view here taken. 14 *How.* 468; 16 *How.* 469; 1 *Am. R. Cas.* 181, note (1); 15 *New York* 444; *Welles* v. *New York Central R. R.*, 26 *Barb.* 641; *Same* v. *Same*, 25 *New York* 442; 26 *Eng. Law & Eq.* 443; *Perkins* v. *New York Central R. R.*, 24 *New York* 196; *The Indiana Central R. R.* v. *Mundy*, 21 *Ind.* 48; *Illinois Central R. R.* v. *Read*, 37 *Ill.* 484.

It is not necessary to criticise these cases, but the reports show that, while the rule now applied has been generally adopted, much of the discussion in them turned upon the questions: 1. Whether the passenger was riding gratuitously. 2. Whether the liability attached where there was gross negligence or willful misfeasance.

Kinney et al., adm'rs of Mettler, v. Central R. R. Co. of N. J.

It is very difficult to fix the degrees of negligence by legal definitions, to say " how much care will relieve a party from the imputation of gross negligence, or what acts or omissions will charge him with it;" and it is doubted by Justice Curtis, in the case referred to in 16 *Howard*, whether the terms slight, ordinary, and gross negligence can be usefully applied in practice.

It may well be doubted whether the existence of a greater or less degree of negligence is important in its legal effect, except so far as it may be evidence of bad faith.

The case before the court is not burthened with any consideration of the degrees of negligence. The jury found negligence in the agents of the company, which, in the absence of proof to the contrary, must be presumed to be ordinary negligence.

In the case of the *Pennsylvania Railroad Co.* v. *Henderson*, reported in 51 *Penn. State R.* 315, the Supreme Court of Pennsylvania has taken a different view of the law, but in that case the passenger was riding on what is called a drovers' pass, which the court held not to be a gratuitous pass, and treated the contract as that of a common carrier, attempting to limit his liability, by special agreement, with a paying passenger.

It is too late to raise the question with regard to the want of a stamp on the contract endorsed on the free ticket; that defect, if it could avail the plaintiff at all, must have been insisted on when the instrument was offered in evidence.

The result is, that the case made furnished a full defence to the company, and the judgment of the Supreme Court must, therefore, be affirmed.

*For affirmance*—CLEMENT, DALRIMPLE, KENNEDY, OGDEN, OLDEN, SCUDDER, VAN SYCKEL, WALES.    8.

*For reversal*—None.