[Civ. No. 2311.    First Appellate District.—April 24, 1918.]

JAMES IRVINE, Appellant, v. POSTAL TELEGRAPH-CABLE COMPANY (a Corporation), Respondent.

CONTRACT — GRANT OF RIGHT OF WAY TO TELEGRAPH COMPANY — TELE-GRAPH PRIVILEGES AS CONSIDERATION—BREACH—MONEY OBLIGATION. Where a contract between a property owner and a telegraph company granting to the latter a right of way over the lands of the former provided that the consideration for the grant was "telegraph privileges to the amount of one thousand five hundred dollars, which said amount shall be taken in the use of telegraph privileges at the usual and ordinary rates," on the failure of the company to issue to such grantor any telegraph franks or allow him any telegraph privileges, by reason of the passage of laws prohibiting telegraph companies from issuing franks for any consideration except

cash, the contract, in view of section 1451 of the Civil Code, became one to pay the sum of money designated as the consideration for the privileges granted by the contract, since the amount of money named in the contract was the exact equivalent of the value of the privileges which the obligor was compelled to furnish.

ID.—PROHIBITION OF FRANKING PRIVILEGE—STATE PUBLIC UTILITIES ACT —PRIOR CONTRACT UNAFFECTED AS TO INTRASTATE MESSAGES.—The State Public Utilities Act prohibiting telegraph companies from issuing franks for any consideration, except cash, does not impair the validity of a contract granting a right of way in consideration of telegraph privileges executed prior to the passage of such act, in so far as the furnishing of franks for intrastate messages is concerned, in view of section 10, article I, of the federal constitution prohibiting any state from passing a law impairing the obligation of contracts.

ID.—ILLEGALITY OF CONTRACT AS TO INTERSTATE MESSAGES—VALIDITY AS TO INTRASTATE MESSAGES—SEVERABLE CONTRACT.—A contract providing for the furnishing of franking privileges in consideration of the grant of a right of way, which became void as to interstate messages by the passage of the Interstate Commerce Act, is not also void, as to intrastate messages, since the contract as to interstate and intrastate messages was clearly separable in fact and law.

ID.—ACTION ON QUANTUM MERUIT—VALUE OF RIGHT OF WAY—CONTINUANCE IN POSSESSION—PLEADING—SUFFICIENCY OF COMPLAINT.—In an action against a telegraph company on a *quantum meruit* for a right of way granted it for a pole line after the consideration for the grant had become partly illegal, the complaint is not subject to the objection that it failed to allege that defendant continued in possession after a stated date, where it is alleged that the value of the right of way and the use and enjoyment thereof up to that date was one thousand five hundred dollars.

ID.—ILLEGAL CONTRACT—SUBSEQUENT LEGISLATION—RULE AS TO PARTIES IN PARI DELICTO INAPPLICABLE.—The rule that where parties to an illegal contract are in *pari delicto*, the court leaves them as it finds them, does not apply where the contract was a legal, just, and equitable one when made, but has become unlawful in part by subsequent legislation.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco.   J. M. Seawell, Judge.

The facts are stated in the opinion of the court.

Guy C. Earl, and W. H. Spaulding, for Appellant.

Willard P. Smith, and Berkeley B. Blake, for Respondent.

LENNON, P. J.—This is an appeal from a judgment following an order sustaining defendant's general demurrer to plaintiff's second amended complaint.

The complaint alleges the execution of a written contract on April 29, 1893, between the plaintiff and defendant's predecessor in interest, the Pacific Postal Telegraph-Cable Company, and the assignment of the contract by the Pacific Postal Telegraph Company to defendant; that by the terms of the contract plaintiff granted to the Telegraph Company a right of way and easement to construct and maintain poles for telegraph lines across his property. The alleged consideration for the said grant was the sum of one thousand five hundred dollars cash, the defendant to have the privilege, however, of paying in telegraph franks to that amount. The contract, which was attached to the complaint and made a part thereof, provided that the consideration for the rights and privileges was to be "telegraph privileges over the lines of the said party of the second part upon what is known as the Pacific Coast lines to the amount of one thousand five hundred dollars, which said amount of one thousand five hundred dollars shall be taken in the use of telegraph privileges at the usual and ordinary rates." It is further alleged that the plaintiff performed all of the obligations on his part to be performed, but that the defendant since the month of September, 1913, failed to issue to plaintiff any telegraph franks or allow him any telegraph privileges, and that the only consideration ever received by him was and is telegraph privileges of the value of $500.26; that the right of way granted to defendant is upward of nine miles in length and extends across valuable lands of the plaintiff; and that said right to erect and maintain telegraph poles and wires, with the right of ingress and egress across plaintiff's said lands, was on the twenty-ninth day of April, 1893, ever since has been, and now is, of the reasonable value of one thousand five hundred dollars cash; that the actual use and enjoyment by the defendant and its predecessor in interest of the said rights and easement from said twenty-ninth day of April, 1893, to the commencement of this action was and is reasonably worth the sum of one thousand five hundred dollars; and as a result of defendant's failure to issue any franks since September, 1913, plaintiff has been

damaged in the sum of $999.74. The prayer of the complaint is that defendant be required to issue telegraph franks and to grant plaintiff telegraph privileges in accordance with the agreement of the value, at the usual rates, of $999.74, or that defendant be ordered and directed to pay plaintiff cash in said sum, and for such other or additional relief as the facts would warrant.

In support of the order sustaining the general demurrer, it is argued that the law, both federal and state, enacted and in force since the execution of the contract in controversy, prohibited telegraph companies from issuing franks for any consideration whatsoever except cash; that therefore defendant is excused and relieved from any obligation to furnish further franks to plaintiff; and that no consideration other than franks can be required of defendant under the terms of the contract. This position is untenable under the construction of the contract compelled by the weight of authority, namely, that by its terms the contract in question is in effect in the alternative, and, secondly, because intrastate messages are not prohibited either by the state or federal laws.

The contract provides that the consideration for the rights granted by said agreement is "telegraph privileges . . . to the amount of one thousand five hundred dollars, which said amount shall be taken in the use of telegraph privileges at the usual and ordinary rates." Upon the failure of the obligor to deliver telegraph franks when needed and requested the contract, in our opinion, became one to pay the sum of money designated as the consideration for the privileges granted by the contract, and this is so, we think, because the amount of money named in the contract was the exact equivalent of the value of the telegraph privileges which the obligor was compelled to furnish.

In the case of *Marshall* v. *Ferguson,* 23 Cal. 69, the obligation was "to pay $650 in grain at the market price" on a certain date. The court said: "It was not an agreement to deliver any specified parcel or quantity of grain, but he [the obligor] was to deliver a sufficient quantity which, at the market price, would amount to the sum of $650. . . . Under these circumstances it was the duty of the defendant to deliver the grain on or before the day named to the plaintiff,

and his failure to do so made him liable to pay the sum named in money."

In the case of *Beckwith* v. *Sheldon*, 168 Cal. 742, [Ann. Cas. 1916A, 963, 145 Pac. 97], the obligation was "to convey . . . the sum of fifty thousand dollars in bonds . . . at par." The court, construing this to be a provision for performance in the alternative, said: "Looking to the terms of the agreement, it is easily seen that it is not a mere agreement for the delivery of the bonds. The promise is that 'there shall be paid to' Beckwith 'the sum of fifty thousand dollars.' This is not an agreement to sell or deliver bonds, but a promise to pay money. The addition of the words 'in bonds of the . . . company at par' does not change it into an agreement solely for the delivery of the bonds, but merely gives the payer the option or privilege of making such payment by delivering the bonds as specified when the time of performance has arrived."

We see no difference in principle between the contracts construed in the two cases last cited and the contract in suit here. If, therefore, the obligation to pay "telegraph franks up to the amount of one thousand five hundred dollars at the usual and ordinary rates" is an alternative obligation and gives the obligor an election up to the time of payment (the time of payment being from time to time as the franks are needed by plaintiff), and conceding, as the defendant contends, that the obligation to issue the franks has become unlawful, then the alternative obligation to pay the coin stands alone. (Civ. Code, sec. 1451.)

The federal constitution does not prohibit Congress from making laws which impair the obligations of contracts (8 Cyc. 929), but it does provide that "No state shall . . . pass any . . . law impairing the obligation of contracts." (U. S. Const., art. I, sec. 10.) The contract here involved when made was lawful, and while Congress may pass an interstate commerce act which would impair the obligation of the contract in so far as it relates to interstate messages, still there remain the intrastate messages within the state of California covered by the contract which would not be affected by the Interstate Commerce Act (Act Cong. Feb. 4, 1887, c. 104, 24 Stat. 379), and which could only be affected, if at all, by the State Public Utilities Act (Stats. 1911 (Ex. Sess.), p. 18). With respect to that act our supreme court has held that "There is still the

constitution, of the United States—the supreme law of this state, supreme over its constitution and over its legislature; and of no protection accorded by that instrument to a litigant before this court can that litigant be deprived. Therefore, if it shall be that among the powers conferred by the legislature upon the railroad commission are those whose exercise by that commission do violence to a petitioner's rights under the constitution of the United States, protection under that constitution will be awarded him." (*Pacific Tel. & Tel. Co.* v. *Eshleman,* 166 Cal. 640, [Ann. Cas. 1915C, 822, 50 L. R. A. (N. S.) 652, 137 Pac. 1119].) It is still legal, therefore, to issue under the contract in question telegraph franks for intrastate messages.

It is urged that the contract is not enforceable as to the intrastate messages if void as to the interstate messages, because the contract is entire and inseparable. This point is not well taken, for inter and intrastate messages are clearly separable in fact and in law. They constitute distinct classes of messages and are governed by distinct bodies of laws—the one being governed by the laws of the United States, and the other governed by the laws of the state within which the message is to be conveyed. The pleadings allege the failure and refusal of the defendant to issue franks or allow privileges for intrastate messages and, as the contract might be enforced and plaintiff allowed to receive his consideration in the form of intrastate messages—a perfectly feasible and practicable procedure—the complaint, in this particular, at least, states a cause of action upon the contract.

But apart from these considerations, the prayer of the complaint asks for general relief, and the facts alleged are sufficient, in any event, to constitute a cause of action for recovery of the reasonable value of the rights granted. The complaint alleges that the reasonable value of the privileges granted has at all times been, and now is, one thousand five hundred dollars. Facts are alleged to support this claim, and it is averred that the only consideration ever received by plaintiff for the same was $500.26 worth of franks; that plaintiff has actually suffered damage by reason of the refusal to issue franks or to pay any other consideration for the granted rights and easements, such damage being in the sum of $999.74.

Defendant contends that the complaint fails to state a cause of action on a *quantum meruit* because it fails to allege that

defendant continued in possession after September, 1913. This contention is without merit. The complaint alleges that the value of the right of way and the use and enjoyment thereof by the defendant and its predecessor up to September, 1913, was one thousand five hundred dollars. Consequently the failure to allege that defendant continued in possession after September, 1913, does not militate against the sufficiency of the complaint when tested by a general demurrer.

Defendant further contends that, where a contract is illegal, there can be no recovery for the reasonable value of the property transferred under it, and in this behalf cites a number of cases where the contract involved, at the time it was made, was contrary to an express provision of law, or to good morals. The rule that where parties to an illegal contract are in *pari delicto* the court leaves them as it finds them does not apply in the present case, where the contract was a legal, just, and equitable one when made, but which has become unlawful in part by subsequent legislation. To deny recovery for property conveyed under a contract legal when made, and legal when the property was conveyed, but which by reason of a change in public policy has become unlawful, would be to take property without due process of law.

For the above reasons, the judgment is reversed, with directions to the lower court to overrule the demurrer and require the defendant to answer.

Kerrigan, J., and Beasly, J., *pro tem.*, concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on June 20, 1918.