### SASSAMAN v. PENNSYLVANIA R. CO.
### No. 8408.

Circuit Court of Appeals, Third Circuit.
Argued Nov. 19, 1943.

Reargued Feb. 25, 1944.

Decided Sept. 12, 1944.

John A. Hartpence, of Jersey City, N. J. (Wall, Haight, Carey & Hartpence, of Jersey City, N. J., on the brief), for appellant.

Emanuel Kohn, of Newark, N. J., for appellee.

Before BIGGS, MARIS, JONES, GOODRICH and McLAUGHLIN, Circuit Judges.

JONES, Circuit Judge.

The plaintiff, an employee of the defendant company, brought suit in the District Court for the District of New Jersey to recover damages for injuries sustained by him upon alighting from a passenger train of the defendant company while he was on his way home after having discharged, for the day, the duties of his employment.

The complaint ascribed negligence on the part of the defendant as the cause of the plaintiff's injuries. Generally stated, the alleged negligence consisted of the defendant's failure to maintain a station platform, at the situs of the injury to the plaintiff, in a reasonably safe condition. The complaint lays federal jurisdiction of the controversy upon the diversity of the citizenship of the parties which the trial court found accordingly. The case was tried to the court below without a jury. The trial judge made no conclusion as to any right of action in the plaintiff under the Federal Employers' Liability Act, 35 Stat. 65, c. 149, 45 U.S.C.A. § 51, but did find that the plaintiff was not functioning within the scope of his employment when injured. The trial court also found that the defendant's negligence in the particular alleged was the proximate cause of the plaintiff's injuries, that the plaintiff was free from contributory negligence and that his relationship to the defendant at the time of his injury was that of a passenger to whom the defendant owed reasonable care. The trial court thereupon entered judgment for the plaintiff on the basis of his common law right of action for negligence and the defendant took the pending appeal.

Save for an averment that at the time of his injury the plaintiff was engaged in interstate commerce, the complaint is silent as to any right of action in the plaintiff under the Federal Employers' Liability Act. Nor was the case disposed of upon that basis by the court below. However, the plaintiff as appellee now urges upon us the existence of such a right, under the facts of the case, as a ground for sustaining the judgment in his favor. As the right afforded by the Federal Employers' Liability Act, when applicable, is exclusive of all other remedies for injuries to employees,[1] it becomes necessary to determine in limine whether the evidence adduced at trial made out a case cognizable under the Act. We, therefore, turn immediately to a consideration of that question.

The plaintiff was employed as a train dispatcher by the defendant company in its terminal offices in Jersey City, New Jersey. His home was in Newark, New Jersey, some nine miles distant from the place of his employment. The facts disclose, and it is undisputed, that the customary duties of the plaintiff's employment were in furtherance of interstate commerce conducted by the defendant company as a common carrier by rail. On August 8, 1939, the plaintiff, having completed his work for the day a few minutes before three o'clock in the afternoon, left his place of employment in the defendant's Jersey City offices and, after descending to the station below, there

[1] North Carolina R. Co. v. Zachary, 232 U.S. 248, 256, 34 S.Ct. 305, 58 L.Ed. 591, Ann.Cas.1914C, 159; New York Central R. Co. v. Winfield, 244 U.S. 147, 149, 150, 37 S.Ct. 546, 61 L.Ed. 1045, L.R.A.1918C, 439, Ann.Cas.1917D, 1139; New York Central & H. R. R. Co. v. Tonsellito, 244 U.S. 360, 361, 37 S.Ct. 620, 61 L.Ed. 1194.

boarded one of the defendant's passenger trains at 3:04 that afternoon, as was his custom, to return to his home in Newark. The train itself was in intrastate commerce running between Jersey City and South Amboy, New Jersey. When the train arrived at the defendant's South Street Station in Newark, the place of the plaintiff's intended departure, it was so brought to a stop that the car in which the plaintiff was riding, toward the rear of the train, was near the end of the platform. The plaintiff was thus required to alight at a place on the platform which he had never before traversed. The platform, which was of brick surface, was in a bad state of repair where the plaintiff alighted, there being a depression in the platform, immediately below the car steps which the plaintiff descended, about a foot and a half in diameter and an inch and a half to two inches in depth. The depression was not readily discernible by one looking down on it from above. It caused the plaintiff to lose his balance and fall upon stepping into it. Thereby, he suffered the injuries, as to which there is no serious dispute, for which he brought his suit to recover damages.

▉▉ The question of the plaintiff's right under the Federal Act is to be determined according to the existing law at the time of his injury which occurred shortly prior to the 1939 amendment, 53 Stat. 1404, 45 U.S.C.A. §§ 51, 54, 56, 60. He can therefore maintain a right of action under the Act, as it existed at the time of the occurrence in question, only if the defendant was then engaged as a common carrier in interstate commerce and he was employed by the carrier in such commerce.[2] This, we think the evidence fails to establish. The trial court found, and the evidence well justifies the finding, that the plaintiff was not functioning within the scope of his employment at the time he sustained his injuries. In fact, plaintiff's counsel at trial stipulated of record that "to travel on the train [from Jersey City to Newark] was not within the scope of his duty" and "that what he was doing [i.e., travelling on the defendant's train], he was doing voluntarily * * *." (Applts. App. pp. 36a, 37a). In any event, it is beyond dispute that, at the time of his

injury, the plaintiff was not in the performance of the duties of his employment which he had already completed for the day in Jersey City.

It seems clear from the facts which we have recited that the plaintiff failed to show that both he and his employer were engaged in interstate commerce at the time of the infliction of his injuries. It would follow, therefore, that a case under the Federal Employers' Liability Act, prior to its amendment in 1939, is not made out by the record before us. North Carolina R. Co. v. Zachary, 232 U.S. 248, 256, 34 S.Ct. 305, 58 L.Ed. 591, Ann.Cas.1914C, 159.

But, notwithstanding his counsel's formal admissions at trial, as above quoted, the plaintiff now argues that, when injured at Newark, he was still upon the defendant's premises consequent upon and incident to his taking leave of his place of employment in order to return home and that therefore his status as an employee, engaged in his employer's interstate commerce, still endured so as to entitle him to a right of action under the Federal Employers' Liability Act. Cf. Erie R. Co. v. Winfield, 244 U.S. 170, 37 S.Ct. 556, 61 L.Ed. 1057, Ann. Cas.1918B, 662; Cudahy Packing Company v. Parramore, 263 U.S. 418, 44 S.Ct. 153, 68 L.Ed. 366, 30 A.L.R. 532; Lukon v. Pennsylvania R. Co., 3 Cir., 131 F.2d 327.

▉▉ We believe it will be found in the cases just cited as well as generally that, in order for an injured employee to be able to claim a right of action under the Federal Employers' Liability Act, it must be made to appear that his injuries were sustained either upon the premises where he normally performed the duties of his employment or upon premises so closely adjacent thereto as to be a part of the working premises in the sense that the employee was required to traverse them in going to or upon leaving his work. In other words, the employee's presence upon the premises where he receives his injuries must have been a necessary incident to the discharge of the duties of his employment. Thus, in the Winfield case, supra, 244 U.S. at page 173, 37 S.Ct. at page 557, 61 L.Ed. 1057, Ann.Cas.1918B, 662, the Supreme Court said that "In leaving the carrier's yard at the close of his day's work *the de-*

[2] Erie R. Co. v. Welsh, 242 U.S. 303, 306, 37 S.Ct. 116, 61 L.Ed. 319; Shanks v. Delaware, L. & W. R. Co., 239 U.S. 556, 558, 36 S.Ct. 188, 60 L.Ed. 436, L. R.A.1916C, 797; Illinois Central R. Co.

v. Behrens, 233 U.S. 473, 478, 34 S.Ct. 646, 58 L.Ed. 1051, Ann.Cas.1914C, 163; North Carolina R. Co. v. Zachary, 232 U. S. 248, 251, 34 S.Ct. 305, 58 L.Ed. 591, Ann.Cas.1914C, 159. ·

*ceased was but discharging a duty of his employment."* (Emphasis supplied.) In the Parramore case, 263 U.S. at page 421, 44 S.Ct. at page 153, 68 L.Ed. 366, 30 A.L.R. 532, the place of the employee's injury was "The only practicable way of ingress and egress for employees * * *." In the Lukon case, the employee, a section hand, was killed after his work for the day was over but while he was walking toward his home along the right of way upon which he customarily worked. In Bountiful Brick Company v. Giles, 276 U.S. 154, 48 S.Ct. 221, 72 L.Ed. 507, 66 A.L.R. 1402, where the Utah Workmen's Compensation Act was involved, the Supreme Court gave pointed expression to the crucial situation determinative of the commencement or termination of the employee relationship prior to the employee's entering the actual place of his employment. It was there said (276 U.S. at page 158, 48 S.Ct. at page 222) that: "Probably, as a general rule, employment may be said to begin when the employee reaches the entrance to the employer's premises where the work is to be done; but it is clear that in some cases the rule extends to include adjacent premises used by the employee as a means of ingress and egress with the express or implied consent of the employer." Of course, the rule as to when the employment ends could be no different as the use of the word "egress" in the above quotation envisions.

In short, the condition which makes possible a claim for injuries suffered as in the course of employment but which are actually received on premises away from the employee's place of employment is the fact that the employee must, of necessity, traverse such other premises in order to reach or depart from the place of the discharge of his duties. In such circumstances, he is upon the adjacent or other premises, as a requisite of his employment, either with the knowledge and consent or the approval of his employer, at the least, legally implied from the knowable situation.

But, that is not this case. When the plaintiff descended from his place of employment to the defendant's Jersey City Station he was free to travel home or go elsewhere, as suited his desires, by whatever means of transportation he chose. He was not required to travel on the defendant's train. Much less, was he required to travel upon a particular train. There was absent, therefore, the employer compulsion as to the mode of travel to and from work which serves to attach or continue the employee relationship, away from the place of employment, and makes an interstate employee's right of recovery for injury remediable under the Federal Employers' Liability Act. See Atlantic Coast Line R. Co. v. Williams, 5 Cir., 284 F. 262. Cf. Glover v. Union Pac. R. Co., D.C., 21 F. Supp. 618, appeal dismissed upon stipulation, 9 Cir., 97 F.2d 1015, 1016.

Nor do the cases of North Carolina R. Co. v. Zachary, 232 U.S. 248, 34 S.Ct. 305, 58 L.Ed. 591, Ann.Cas.1914C, 159, Virginian R. Co. v. Early, 4 Cir., 130 F.2d 548, or Chicago, M., St. P. & P. R. Co. v. Kane, 9 Cir., 33 F.2d 866, lay down any different rule as to the extent of the premises which admit of the existence of an employee relationship before the employee has actually arrived at or after he has left his place of employment. In the Zachary case, during a temporary suspension of his work, the employee, a fireman, while attempting to cross certain tracks which intervened between his engine and his boarding house, a short distance away, was killed within the limits of the railroad yard where he worked. In the Early case, the employee was killed in the railroad yard on the premises upon which he worked while returning from a restaurant, on the same premises, maintained by the railroad for the use of its employees. And, in the Kane case, the employee, while passing, before his work for the day had begun, from his bunk on a side track to the toilet maintained by the railroad at a workmen's camp was killed by steam from an engine upon the tracks where he worked. The only case that we have been able to find which extends the employee relationship to premises beyond the place of the employee's employment or premises adjacent thereto is Hendricks v. New York, N. H. & H. R. Co., 251 N.Y. 297, 167 N.E. 449, a decision by the Court of Appeals of New York. While that case involves a construction of the Federal Employers' Liability Act, in the administration whereof state courts exercise concurrent jurisdiction (Second Employers' Liability Cases Mondou v. New York, N. H. & H. R. Co., 223 U.S. 1, 56, 32 S.Ct. 169, 56 L. Ed. 327, 38 L.R.A.,N.S., 44), and is therefore pertinent, the decision, which was by a divided court, extends, we believe, the employee relationship in interstate commerce beyond the limits set by the federal decisions to which we have referred.

We accordingly concede that the plaintiff was not acting within the scope of his employment at the time he received his in-

954

juries and that, consequently, he was not employed in interstate commerce at that time. It, therefore, follows that he does not have a right of action under the Federal Employers' Liability Act. Cf. Young v. New York, N. H. & H. R. Co., 2 Cir., 74 F.2d 251, and Bishop v. Delano, 7 Cir., 265 F. 263, certiorari denied 254 U.S. 632, 41 S.Ct. 7, 65 L.Ed. 448.

We come then to the question whether the trial court, having found the defendant's negligence to have been the proximate cause of the plaintiff's injuries and having also found the plaintiff free of contributory negligence, was justified, under other circumstances present, in entering judgment for the plaintiff upon his common law right of action for damages.

In going from his place of employment in Jersey City to his home in Newark upon the defendant's train, the plaintiff travelled upon a pass which was good on the defendant's entire system save for a few expressly excepted trains (not here involved). The plaintiff was entitled to and received the pass from the defendant because of his length of service with the railroad (forty years at the time of his injury). At an earlier time he had received trip passes as occasion required, then later zone passes and finally the annual pass upon which he was riding at the time in question. On the back of the pass was the following:

"Conditions.

"This pass is not transferable. If presented by a person not named therein, Conductor will take up the pass, and collect the proper fare. The user expressly assumes all risks of accidents, and of personal injury, and loss or damage to property, regardless of their causes, and absolves the Company from all liability therefor. As a condition to its issue, it is declared by the user that such user is not prohibited by law from receiving free transportation, and further that the pass will be lawfully used."

It is the defendant's contention that the plaintiff by accepting and using the pass made himself subject to the conditions printed thereon and that thereby he contracted away his common law right of action for damages for the particular injuries by assuming "all risks of accident, and of personal injury * * * regardless of their causes" and by absolving "the [defendant] Company from all liability therefor." There can be no doubt that the conditions of the pass, if presently effective, are sufficiently specific to work the result contended for by the defendant.

■ Federal jurisdiction of the controversy being based upon diversity of citizenship, we should have thought that the substantive rights of the parties were to be determined according to the applicable local law which confers the right sought to be barred by the release (Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L. Ed. 1188, 114 A.L.R. 1487), were it not for the decision in Kansas City Southern R. Co. v. Van Zant, 260 U.S. 459, 468, 43 S.Ct. 176, 177, 67 L.Ed. 348. There it was held that Congress, by the Hepburn Act,[3] had legislated not only as to the persons to whom railroads might lawfully issue free passes but also as to "the relation of their users to the railroad which issued them, the fact and measure of responsibility the railroad incurs by their issue, and the extent of the right the person to whom issued acquires, * * *." Whether or not that was intended to mean that the effectiveness of a release of a carrier's liability for negligence, by one travelling on a pass, is in all places to be determined according to federal rules under the Hepburn Act, the effect of the release would have been no different had we referred to the law of New Jersey—the place of the alleged wrong—for under the federal decisions[4] as well as under the law of New Jersey,[5] such a release is valid and enforceable when given by a passenger not for hire. When a railroad pass is necessarily "free" is, of course, to be determined exclusively in accordance with the intent of the Hepburn Act, the paramount pertinent regulation.

The question, therefore, which arises under the instant circumstances is whether the pass was free in the sense that it was a gratuity, within the contemplation of the

3 34 Stat. 584, 49 U.S.C.A. § 1(7).

4 Boering v. Chesapeake Beach R. Co., 193 U.S. 442, 24 S.Ct. 515, 48 L.Ed 742; Northern Pacific R. Co. v. Adams, 192 U.S. 440, 24 S.Ct. 408, 48 L.Ed. 513.

5 See Sheridan v. New Jersey & New York R. Co., Err. & App., 104 N.J.L. 622, 141 A. 811; Demarest v. Palisades Realty & Amusement Co., Err. & App., 101 N.J.L. 66, 127 A. 536, 38 A.L.R. 352; Morris v. West Jersey & S. R. Co., Err. & App., 87 N.J.L. 579, 94 A. 593; Kinney v. Central R. Co. of New Jersey, Err. & App., 34 N.J.L. 513, 3 Am.Rep. 265.

Hepburn Act, while being used by the plaintiff, as customarily, in travelling to and fro between his home and his place of work as a necessary antecedent to or consequence upon the discharge of the duties of his employment. This precise question has never been judicially passed upon so far as our research discloses, but we think the answer is to be found by apt analogy in the decision of the Supreme Court in Norfolk Southern R. Co. v. Chatman, 244 U.S. 276, 37 S.Ct. 499, 61 L.Ed. 1131, L.R.A. 1917F, 1128.

In the Chatman case, a drover, travelling on a pass in connection with the shipment of some horses, was injured in the course of travel through the negligence of the carrier for which he brought suit for damages. The pass contained a complete release of the railroad from liability. The drover had signed the release upon issuance of the pass for which he had paid nothing. In fact, the contract in connection wherewith the pass was issued expressly recited that only the freight upon the horses had been paid. Notwithstanding that the drover admittedly had not paid anything for the pass, the Supreme Court held that it was not a gratuity within the intendment of the Hepburn Act as was the pass to a member of an employee's family in Charleston & W. C. R. Co. v. Thompson, 234 U.S. 576, 34 S.Ct. 964, 58 L.Ed. 1476, which the Chatman case expressly distinguished.

The distinction with respect to the pass in the Chatman case was based upon the theory that Congress, in enacting the Hepburn Act, must have had in mind the historical relationship which had theretofore existed between railroads and drovers travelling upon such railroads in connection with the shipment of livestock, and, therefore, did not intend that that existent status should be affected by the provisions of the Hepburn Act. The Supreme Court accordingly held that the drover, although riding on a pass for which he had paid nothing, stood in the relationship to the carrier of a passenger for hire, just as he had theretofore, and that his release of the railroad's common law liability for negligence was void and unenforceable.

There was also an historical contractual relationship between railroads and their employees who, living at distances from their places of employment, travelled between their homes and their work on transportational facilities afforded by their employer. Where the means of travel were required or provided by the carrier for the employee's use in direct connection with the immediate discharge of his duties, the employer-employee relationship was held to exist and an injury to an employee in the course of such travel was compensable only on the basis of that relationship. For illustrations, see cases cited in annotation in 13 Ann.Cas. 890. But, where the employee, having completed or not yet having undertaken his work for the day and not being under any direction or compulsion from his employer as to his mode of travel to and from work, utilized, of his own volition, the employer's regular passenger train service for the purpose of going to or from work, upon a pass furnished by the employer, he was held not to be in the performance of his employment, while so travelling, but a passenger and, as such, entitled to the care due by a common carrier to a passenger for hire.

While we have not found any pertinent federal decision on this precise point at the time of the passage of the Hepburn Act, there were well considered state decisions to that effect. In a case note in 19 Yale Law Journal at p. 57 (1909) on Vroom v. New York Cent. & H. R. R. Co., 1909, 129 App.Div. 858, 115 N.Y.S. 1063, affirmed 1910, 197 N.Y. 588, 91 N.E. 1121, the author stated that,—"The weight of authority appears to be that an employee of a railroad travelling on a pass to and from work is a passenger, not an employee", citing Doyle v. Fitchburg R. Co., 1894, 162 Mass. 66, 37 N.E. 770, 25 L.R.A. 157, 44 Am.St.Rep. 335, and McNulty v. Pennsylvania R. Co., 1897, 182 Pa. 479, 38 A. 524, 38 L.R.A. 524, 61 Am.St.Rep. 721. A distinguishing feature is that, at the time of the employee's travel to and from his place of work and his home upon a regular passenger train of his employer, he is performing no part of the service for which he is employed and is under no obligation to ride upon his employer's trains for the performance of his duties. See the McNulty case, supra, 182 Pa. at pages 483, 484, 38 A. at page 525, 38 L.R.A. 524, 61 Am.St.Rep. 721. While it was said in that case that the employee's right to travel to and from work on his employer's trains was a service which the railroad by the terms of its contract was required to render the employee, the contractual status of passenger, occupied by a railroad employee travelling to and from work on a pass furnished by his employer, arose as well by

956

virtue of a rule of the company or by common custom. See Klinck v. Chicago City R. Co., 1914, 262 Ill. 280, 104 N.E. 669, 52 L.R.A.,N.S., 70, Ann.Cas.1915B, 177.

That the custom, to which reference has just been made, was known to Congress at the time the Hepburn bill was under consideration, is hardly open to question. The memorial then lodged by the railroad brotherhoods with Congress [6] pointed out the custom and stressed, in particular, the need for excluding from the implications of the free pass prohibition of the Hepburn bill employees who found it convenient and economical to travel between their work and their homes on their employer's trains.[7] That Congress was sympathetic to the preservation of the status theretofore enjoyed by employees of railroads with respect to passes appears in the debates on the bill as the illustration in the margin [8] taken from the debate in the Senate on the first conference report confirms. The bill went to a second and, finally, a third conference from which it emerged, as ultimately passed, with a prohibition upon the issuance by an interstate carrier of a free pass or free transportation to anyone except to its employees and their families and certain other expressly excepted persons.

 On the basis of the reasoning in the Chatman case, it is our opinion that Congress did not intend by the Hepburn Act to alter the status of employees of railroads while travelling between their homes and their work on passenger trains of the employer upon passes furnished by the latter. It will be noted that, in excluding "caretakers of livestock" (drovers) from among those to whom interstate carriers were not permitted to issue free passes, the Hepburn Act did so in exactly the same way that it excepted "employees and their families." So far as the words of the statute are concerned, the pass is no more "free", in the sense that it is a gratuity, in the one instance than it is in the other.

If it be suggested that what has just been said would serve equally to preserve to a member of an employee's family, while travelling upon a free pass, the rights of a passenger for hire, the answer is that, for many years prior to the enactment of the

[6] See senate Doc. No. 477, 59th Cong., 1st Sess., 40 Cong.Rec. 7821–7822 (1906).

[7] The memorial of the Brotherhood of Locomotive Engineers, Brotherhood of Locomotive Firemen, Order of Railway Conductors, and Brotherhood of Railroad Trainmen, remonstrating against the passage of the anti-pass amendment to the Railroad Rate Bill (Hepburn Act) which the Vice President laid before the Senate on June 5, 1906, stated in part that,—

"In view of the absolute necessity to at times deadhead men over various parts of the road, the passage of such a law would greatly impede the operation of a railroad to say nothing of the extra expense, inconvenience, and hardship it would impose upon the employees.

"There are many cases where the runs of train and engine men terminate at other than their home stations; this is especially true as regards local, way-freight and work-train runs; and it is now the practice of many roads to issue free transportation to these men in order that they may spend their nights and Sundays at home. The passage of the provision in question would require these men to spend their nights and Sundays away from home for the reason that they could not afford to pay transportation back and forth.

"It is also a fact that a very large number of the shop and office forces of many railroads whose headquarters are in the large cities of necessity live in suburban towns along the road and they are given free transportation back and forth to their work."

[8] In the debate in the Senate on the first conference report, 40 Cong. Rec. 7852 (1906), Senator Foraker (of the majority) said:

"* * * After careful consideration the Senate determined that the employees for themselves and their families should have the privilege of securing passes from the railroads on which they are employed and other railroads that might be willing to give exchange passes. That has been part of the pay for their services rendered ever since we have been operating railroads in this country. It is a privilege which they merit. * * *.

"I would argue this at some length if I thought there was any necessity for it. I do not think there is any necessity, because almost every Senator, if not every Senator here, has received today, as I have, numerous telegrams protesting against this discrimination against them, or rather this denial to them of the rights and privileges which they have always enjoyed in this respect.

"* * * Senator Tillman [of the minority] * * * I have always been in favor of * * * the privilege that they now enjoy of being transported free and having their families transported free."

Hepburn Act, a gratuitous pass was held capable of validating a release of the issuing carrier's liability for negligence. What the Thompson and Van Zant cases decided was that a pass to a member of an employee's family was, of necessity, a gratuity and the release of liability therefore binding. And, while the decisions in the Thompson and Van Zant cases might cogently be advanced to validate a release of liability by an employee for injury received while travelling upon his pass for his own pleasure or other personal purposes, we think that a material distinction is clearly indicated where the pass is used by the employee for travel between his home and his place of employment. In the latter instance, the employee uses the pass in order to render his services available to the employer at the designated place of work. When so travelling, the employee makes a contemplated use of the railroad's passenger facilities for the latter's service just as the drover makes a like contemplated use of the railroad's transportational facilities for the purpose of seeing to the care and attention of livestock while in the carrier's custody. The pass to the drover in the Chatman case, although free, was not a gratuity within the intent of the Hepburn Act. We think the same is no less true of a pass to an employee where it is used by him to go to and from his work.

The record in this very case discloses that, at a former time when the plaintiff was resident in Newark, his services as a train dispatcher were utilized by the railroad in Philadelphia between which place and his home he travelled back and forth on his pass. In so travelling, he was not performing the service for which he was employed and, therefore, had no right of action as an employee for any injury received in the course of travel. If, in such circumstances, it was necessary for him, because of the Hepburn Act, to pay his fare in order to preserve his right to reasonably safe conduct by the carrier, it is only reasonable to infer that his additional travel expense would have called for a compensating increase in his wage or the carrier might have been deprived of his services. A pass, when so used by an employee, cannot in any true sense be deemed a gratuity.

The fact that the pass upon which the

plaintiff was riding, when returning home from his work, was the same pass he would have used to travel for his own pleasure can hardly serve to obliterate the distinction as to his contractual relation with the carrier when he was using the pass to go to and from his work. The plaintiff being already possessed to his employer's knowledge of a pass capable of providing for his travel between his work and his home, it would indeed be an unwarranted insistence upon form to hold that he should have obtained a separate pass for his travel to and from his work in order not to impair his status as a passenger while so travelling. The pass he had was quite capable of serving the dual purposes. Nor can there be any greater difficulty in determining the purpose for which a pass is being used at any particular time than there is in establishing any other fact material to a litigated issue. Certainly, there is no question in this case that, at the time of the plaintiff's injury, he was using his pass, as was his custom, to return home after his completion of his day's work.

The question here presented is purely one of statutory construction as to the intent of the Hepburn Act in its relation to a given situation just as was the question in the Chatman case. Any other construction than that the Hepburn Act was not intended to afford a carrier the basis for a release of its liability for negligence to an employee whom it is transporting as a passenger between his work and his home upon a free pass would indeed be hard to reconcile with the Congressional concern evidenced for railroad employees whose claims for injury qualify under the Federal Employers' Liability Act, 35 Stat. 66. Sec. 5 of that Act, 45 U.S.C.A. § 55, expressly nullifies any contract, etc., designed or intended to exempt a carrier from liability for negligence remediable under that Act.[9] What possible reason could there be for imputing to Congress, because of the Hepburn Act, less solicitude for the rights of a carrier's employees whose injuries, although received while going to or from work upon passes furnished by the carrier, are not received in the course of employment or, otherwise, do not happen to qualify as claims under the Federal Employers' Liability Act? We can see none.

As the Hepburn Act fixes the fact and

[9] Sec. 5 of the Federal Employers' Liability Act provides that:

"Any contract, rule, regulation, or devise whatsoever, the purpose or intent of which shall be to enable any common carrier to exempt itself from any liability created by this chapter, shall to that extent be void * * *."

958

measure of responsibility of a railroad in connection with the issuance of a pass and the extent of the right, thereby acquired, by the person to whom issued (Kansas City Southern R. Co. v. Van Zant, supra), it is our conclusion that, under the circumstances here shown, the plaintiff at the time of his injury had the status of a passenger for hire within the intendment of the Hepburn Act and that the release of liability contained on the pass upon which he was riding is, therefore, without legal effect as a bar to his right of action for the defendant's negligence. Compare the Chatman case supra.

That leaves but the question as to whether the proofs support the trial court's findings as to the defendant's negligence and the plaintiff's freedom from contributory negligence. We think that the opinion of the learned court below amply demonstrates that the evidence well justifies the findings of fact which come to us with the conclusiveness of a jury's verdict.

The judgment of the District Court is affirmed.

BIGGS, Circuit Judge (dissenting).

(1) I think that the plaintiff's cause of action arises under the Federal Employers' Liability Act, 35 Stat. 65, 45 U.S.C.A. § 51, and not at common law as the majority hold. The judgment in the plaintiff's favor should be reversed because, though his damages may be found to be the same, the court below must determine whether the defendant was engaged in interstate commerce and whether the plaintiff was employed by the defendant in such commerce.[1] On the record before us, despite the probably inadvertent admissions of his counsel to the contrary, I conclude that he was so employed, but the court below has failed to find the underlying facts upon which conclusions of law as to the plaintiff's status in relation to interstate commerce may be based.

The proof shows that the plaintiff was employed by the defendant as a train dispatcher at Jersey City where he issued directions to operators in respect to some of the defendant's trains moving in interstate as well as intrastate commerce. The majority of this court conclude that because the plaintiff had left his place of employment at Jersey City, had boarded one of the defendant's trains to return to his home in Newark and was descending to the platform at one of Newark's stations when he was injured, that he is beyond the protection of the Federal Employers' Liability Act.

The Federal Employers' Liability Act was intended by Congress to be applied liberally for the protection of railroad employees. While the facts in the case at bar differ somewhat from those of Erie R. Co. v. Winfield, 244 U.S. 170, 173, 37 S.Ct. 556, 557, 61 L.Ed. 1057, Ann.Cas.1918B, 662, the principle enunciated in the cited case by Mr. Justice Van Devanter seems applicable. Winfield had brought suit under a New Jersey statute (chap. 95, Laws 1911, N.J.S.A. 34:15–1 et seq.) against Erie R. Co. to obtain compensation for the death of an employee whose duties consisted of switching cars containing freight in interstate and intrastate commerce. At the close of his day's work the employee had taken his engine to the place where it was to remain for the night and had started to leave the yard on foot. His route lay across some of the tracks, and while crossing one of these he was struck by an engine and received injuries from which he died. Mr. Justice Van Devanter stated: "In leaving the carrier's yard at the close of his day's work the deceased was but discharging a duty of his employment. * * * Like his trip through the yard to his engine in the morning, it was a necessary incident of his day's work, and partook of the character of that work as a whole, for it was no more an incident of

[1] The majority opinion states that "The complaint lays federal jurisdiction of the controversy upon the diversity of the citizenship of the parties which the trial court found accordingly." In my opinion it also aptly charges liability against the defendant under the Federal Employers' Liability Act as well as attempting to state a cause of action at common law. Strictly speaking, the complaint does not allege the plaintiff's citizenship. It states that the plaintiff is "a resident of" New Jersey. As is pointed out in Moore's Federal Practice, p. 484, "Residence in a State does not necessarily make one a citizen of it. It follows that the statement that a party is a resident of a particular State is not equivalent in its legal effect to the allegation that he is a citizen of that State." But I think that the District Court was justified in treating the allegation of the plaintiff's residence in New Jersey as the equivalent of an allegation that he was a citizen of New Jersey. The evidence plainly shows that he was a citizen of New Jersey.

one part than of another. His day's work was in both interstate and intrastate commerce, and so, when he was leaving the yard at the time of the injury, his employment was in both. That he was employed in interstate commerce is therefore plain, and that his employment also extended to intrastate commerce is, for present purposes, of no importance."

In Lukon v. Pennsylvania R. Co., 3 Cir., 131 F.2d 327, 329, we held that a section-hand employed by the Pennsylvania Railroad who had quit work for the day and who was walking home along the main line tracks of the railroad (though still upon the section on which he was ordinarily employed) when he was injured, was within the protection of the Act. We stated, "It is true that Lukon might have left the tracks and gone to his home by means of public roads. It was not his custom to do this, and on the day of the accident he pursued his usual course of going home along the tracks as did other members of his crew." We held that the employee was entitled to recover under the Act. The majority distinguish the circumstances of the Lukon case from those of the case at bar on the ground that while Lukon's work was over for the day, "he was walking toward his home along the right of way upon which he customarily worked." This distinction seems to me to be immaterial and I think that in the decision in the instant case the majority are in reality overruling the Lukon decision.

Attention is directed to Hendricks v. New York, N. H. & H. R. Co., 251 N.Y. 297, 167 N.E. 449, decided by the Court of Appeals of New York in 1929.[2] In this case Hendricks who was engaged in interstate commerce had brought a suit under the Federal Employers' Liability Act for personal injuries sustained by him under circumstances stated by Judge O'Brien as follows: "After the close of working hours, plaintiff was given free transportation by defendant to the station nearest his home. The train consisted of seven or eight cars. He occupied the last seat in the car next to the rear. From conflicting evidence, the jury could find that this car was crowded. It stopped on a trestle some distance south of the station. The station platform was located on the right side of the train, north of the car occupied by plaintiff, and separated from it by two main line tracks. Exit from the rear of plain-

tiff's car was obstructed on the right by a steel girder which contributed to the support of the trestle. The forward end of the car extended a few feet north of and free from this obstruction. Plaintiff testifying that he feared that the train would start before he could traverse the length of the car and emerge from the forward end and that he discovered that his exit from the rear end on the right was blocked by the girder, descended from the rear end on the left, alighted upon planks forming part of the trestle's deck, and, breaking through them, fell to the street and sustained serious injuries."

The court, declaring that Hendricks had a cause of action under the Act, held that he had not severed his employment with the defendant, that he was yet on his employer's premises, that the relation of master and servant continued to exist and that he was still engaged in discharging a duty of his employment. The court cited Erie R. Co. v. Winfield, supra, and Knowles v. New York, N. H. & H. R. Co., 223 N.Y. 513, 119 N.E. 1023. It reversed the judgment of the Appellate Division which had denied Hendricks recovery.

In the case at bar the plaintiff's return by the defendant's train to Newark in order that he might go to his home at the end of his day's work was, in the words of Mr. Justice Van Devanter in the Winfield case, "a necessary incident of his day's work, and partook of the character of that work as a whole." In going home, Sassaman was engaged in discharging a duty of his employment. He was still upon his employer's premises. The relationship of master and servant had not been terminated. He was therefore within the purview of the Act. The majority lay emphasis upon the fact that the plaintiff was under no compulsion to make use of the defendant's train in order to go from Jersey City to Newark; that he might have gone home in some other way. This is true, but there was certainly nothing unreasonable in the plaintiff making use of the convenient means furnished him by his employer. He used the defendant's railroad with the express consent of the defendant for the defendant gave him a pass for that purpose. The rulings of the Supreme Court in Bountiful Brick Co. v. Giles, 276 U.S. 154, 158, 48 S.Ct. 221, 72 L. Ed. 507, 66 A.L.R. 1402, and in Cudahy Co. v. Parramore, 263 U.S. 418, 426, 44 S.Ct.

2 Judges Cardozo and Lehman dissented but did not state their reasons therefor.

153, 68 L.Ed. 366, 30 A.L.R. 532, therefore, are apposite.[3]

If the conclusions which I have expressed are correct, the plaintiff has a right of action under the Federal Employers' Liability Act which supersedes any right of action which he might have had at common law. The provisions of the pass purporting to absolve the defendant from liability for negligence are of no effect by reason of Section 5 of the Act.

The fact that the parties in the case at bar elected to try the case without regard to the provisions of the Federal Employers' Liability Act should not be a paramount consideration for insisting that such an erroneous course be pursued to the end. See Philadelphia & R. R. Co. v. Polk, 256 U.S. 332, 333, 334, 41 S.Ct. 518, 65 L.Ed. 958. The case was tried to the court. I conclude that we should direct the court below to reopen the record so that the parties may present any further evidence which may be pertinent to issues arising under the Federal Employers' Liability Act, for argument on those issues, and for appropriate findings of fact and conclusions of law. The judgment should be reversed and the cause remanded for the purposes indicated.

(2) The majority, holding the Federal Employers' Liability Act to be inapplicable, award Sassaman the same status which was granted to the drover, Chatman, by the Supreme Court in Norfolk Southern R. Co. v. Chatman, 244 U.S. 276, 37 S.Ct. 499, 61 L.Ed. 1131, L.R.A.1917F, 1128, on the basis of the legal and commercial history of carriers' live stock contracts. There is no doubt that the Hepburn Act governs the relation in interstate commerce of the users of passes to the railroads which issue them. Kansas City Southern R. Co. v. Van Zant, 260 U.S. 459, 468, 43 S.Ct. 176, 67 L.Ed. 348. But the Hepburn Act forbids the giving of an "interstate free * * * pass" and does not relate to the issuance of intrastate free passes.[4] Sassaman's "over-the-system" pass was valid whether used by him in interstate or intrastate commerce. The pass, therefore, possessed two aspects, each clearly severable in fact and in law, and I can see no inconsistency in holding under the circumstances of the case at bar that Sassaman was making an intrastate journey as an incident to his employment in interstate commerce. Since the pass was used by the plaintiff on an intrastate journey at the time of the occurrence of the accident, the defendant's liability (unless cognizable under the Federal Employers' Liability Act) necessarily was defined by the law of New Jersey.[5] See Schulz v. Parker, 158 Iowa 42, 54, 139 N.W. 173, 178, Ann.Cas.1915D, 553; Irvine v. Postal Telegraph-Cable Co., 37 Cal. App. 60, 64, 65, 173 P. 487, 488, 489. Compare New York Central R. Co. v. Mohney, 252 U.S. 152, 40 S.Ct. 287, 64 L.Ed. 502, 9 A.L.R. 496, and Bush v. Bremner, 8 Cir., 36 F.2d 189, 191. Compare also Employers' Liability Cases (Howard v. Illinois C. R. Co.), 207 U.S. 463, 28 S.Ct. 141, 52 L.Ed. 297.[6] If the conclusions which I have ex-

[3] It is interesting to note also that the Court of Common Pleas of New Jersey has given an interpretation to the Workmen's Compensation Act of New Jersey, N.J.S.A. 34:15-1, et seq., similar to that which I have placed on the Federal Employers' Liability Act. See Micieli v. Erie R. Co., 29 A.2d 412, 20 N.J.Misc. 294. In the cited case the court held that a baggage porter, employed by the defendant, who was riding on a free pass on the defendant's railroad on his way home from work was within the coverage of the New Jersey statute. A similar result was reached by the Supreme Court of Pennsylvania in Knorr v. Central Railroad of New Jersey, 268 Pa. 172, 110 A. 797, in construing the application of the Workmen's Compensation Act of 1915, 77 P.S.Pa. § 1 et seq. to a railroad fireman returning home from work.

[4] The pertinent provisions of the Hepburn Act, Section 1(7) of the Interstate Commerce Act, 49 U.S.C.A. § 1(7) are as follows: "No common carrier subject to the provisions [of the Interstate Commerce Act] shall * * * issue or give any interstate free ticket, free pass, or free transportation for passengers, except to its employees, * * *."

[5] A pass in intrastate commerce issued in New Jersey must conform to the requirements of the New Jersey Law. See N.J.S.A. 48:3-31.

[6] There is some doubt as to whether the plaintiff could recover if the law of New Jersey were applied. Though no case has been found which is directly in point there are decisions of the New Jersey courts which indicate that a release of liability to the carrier embodied in a "free" pass is not contrary to public policy and that a "free" pass is one for which no consideration has been given or paid. See Sheridan v. New Jersey & N. Y. R. Co., 104 N.J.L. 622, 141 A. 811. Cf. Morris v. West Jersey & S. R. Co., 87 N.J.L. 579, 94 A. 593. See, however, a possibly applicable New Jersey Statute; N.J.S.A. 48:12-100. It would

pressed are correct, the interpretations which the majority put on the Hepburn Act and the Chatman case must fall.

Assuming arguendo, however, that the Hepburn Act does govern the relation of Sassaman to the Railroad Company under the pass despite the intrastate nature of his journey, I am unable to agree with the majority. Their view entails a return to those early decisions which gave an employee, riding on a pass on the carrier which employed him, the status of a "passenger for hire" in order to mitigate the harshness of the fellow servant rule or of the doctrine of assumption of risk.

To effect this result, many courts held that the relationship of master and servant terminated immediately at the end of each tour of duty of the employee or treated the pass as part of the compensation of the employee. Typical of these cases is Hebert v. Portland R. Co., 1907, 103 Me. 315, 69 A. 266, 125 Am.St.Rep. 297, 13 Ann.Cas. 886. A case, on which the majority rely, and which illustrates the second view, is McNulty v. Pennsylvania R. Co., 1897, 182 Pa. 479, 38 A. 524, 38 L.R.A. 524, 61 Am.St.Rep. 721.[7]

The majority deem Sassaman to have been a passenger for hire and not an employee at the time of the accident. They arrive at this result by making a distinction between the status of an employee who makes use of a pass to ride to or from his work and an employee who uses the pass for his own purposes. A member of an employee's family who is riding on a pass is put in the latter category and the majority opinion therefore concludes that the rulings of the Supreme Court in Charleston & W. C. R. Co. v. Thompson, 234 U.S. 576, 34 S.Ct. 964, 58 L.Ed. 1476, and Kansas City Southern R. Co. v. Van Zant, 260 U.S. 459, 43 S.Ct. 176, 67 L.Ed. 348, are inapplicable to the case at bar. The decisions cited hold that the provisions of a pass which caused the user to assume the risk of injury by the carrier were valid in respect to a member of the family of an employee. The majority opinion in the case at bar holds simply this: when a pass is used by an employee who is riding for his own purposes the pass is a gratuity; but, if the pass is used by the employee to ride to or from work it is not a gratuity and the employee is a passenger for hire.[8]

At this point what I deem to be the erroneous conception of the majority opinion clearly appears. First, it may be asked, if when riding to or from work the employee is not riding for his own purposes as the majority assert, for whose purposes is he riding? The answer to this question seems obvious. The employee is riding for his employer's purposes, as an incident of his employment, and therefore, he should be deemed to be within the purview of the

be fruitless to discuss the question fully in a dissenting opinion and to endeavor to arrive at the solution of it.

[7] Reference to the opinion in the McNulty case will illustrate my point. Chief Justice Sterrett of the Supreme Court of Pennsylvania stated that McNulty was employed to work on a bridge belonging to the defendant at Tacony, Pennsylvania, "* * * under a contract of employment, by which he was to receive one dollar and twenty cents a day; and the company also contracted to transport him from his home to the place where his work was to be performed and from that place back to his home at night, when his work was over." McNulty was killed on his way home from work by a collision between the train in which he was riding and another train operated by the defendant. The Chief Justice went on to say, "The conclusively established facts as to the contractual relation of the parties are not susceptible of any other conclusion than that the transportation of [McNulty] from and to his home, in Bristol, was part of the consideration moving from the company to him, and given him, with the $1.20, in payment of a day's wages. That being so, he had virtually paid for his passage home in the car in which he was riding at the time of the collision, and was therefore a passenger, and not an employé, since his day's work was done and he had entered the car for the sole purpose of being carried home."

It will be noted how different are the facts of the McNulty case from those of the case at bar.

[8] The inconsistency of the majority opinion is demonstrated by such cases as Tomlinson v. Chicago, etc., R. Co., 8 Cir., 97 F. 252; Moss v. Johnson, 22 Ill. 633; Texas, etc., R. Co. v. Smith, 5 Cir., 67 F. 524, 31 L.R.A. 321. In the cases cited the employee was certainly not riding on the pass for his own purposes, but was engaged in the business of his employer, such as collecting tools, repairing fences, or inspecting bridges. None the less, recovery was denied on the ground that the employee had assumed the risk or had been injured or killed by the negligence of a fellow servant.

Federal Employers' Liability Act if he is engaged in interstate commerce when working for his employer. Second, if the pass to the employee who is riding to or from work is not a gratuity, this is because there is a consideration for it. That consideration can only be the employee's services to the carrier. If the consideration for the employee's pass consists of the services to the carrier which employs him and the pass was issued under the Hepburn Act, that carrier must be deemed to have violated Section 6(7) of the Interstate Commerce Act, 49 U.S.C.A. § 6(7), a conclusion not to be presumed. This precise point was passed upon by the Supreme Court in the Thompson case.[9] And it was there held that the issuance of passes to those named in the Hepburn Act was gratuitous "in the strictest sense * * *."[10]

Drovers are included in the exception of the Hepburn Act. In the Chatman case the Supreme Court treated the pass to Chatman not as a gratuity but as if it had been a ticket which had been paid for. The Court reached this conclusion because, in deciding New York Cent. R. Co. v. Lockwood, 17 Wall. 357, 21 L.Ed. 627, it had ruled that a drover in charge of his stock and traveling on a pass was a passenger for hire.[11] In both the Lockwood and the Chatman cases the Supreme Court treated the contract for the carriage of the stock as the consideration for the carriage of the drover. But it is notable that the majority opinion in the case at bar does not describe or define the consideration which rendered the pass to Sassaman not a gratuity. Absent such a description or definition, I am compelled to the conclusion that

[9] See 234 U.S. at pages 577, 578, 34 S.Ct. at page 965, 58 L.Ed. 1476. Mr. Justice Holmes stated, "The main question is whether, when the statute permits the issue of a 'free pass' to its employees and their families it means what it says. The railroad was under no obligation to issue the pass. It may be doubted whether it could have entered into one, for then the services would be the consideration for the duty and the pass, and by § 6 it was forbidden to charge 'a greater or less or different compensation' for transportation of passengers from that in its published rates. The antithesis in the statute is between the reasonable charges to be shown in its schedules and the free passes which it may issue only to those specified in the act. To most of those enumerated the free pass obviously would be gratuitous in the strictest sense, and when all that may receive them are grouped in a single exception, we think it plain that the statute contemplates the pass as gratuitous in the same sense to all."

Compare the law of New Jersey. See N.J.S.A. 48:12–100.

[10] It is interesting to observe that in the Brotherhoods' Memorial, 59th Cong., 1st Sess., 40 Cong.Rec. 7822 (referred to in the majority opinion in its note No. 7), issuance of passes to families of employees was regarded by the Legislative Representative of the Brotherhood as a consideration or as part of the compensation for the services performed by employees of the railroads. The Memorial stated in material part, "As to the families of employees: The contractual relations now existing between many roads and their men provide in certain cases for transportation for employees, their families, and household goods. This is

regarded as a consideration or a part of the compensation for the services performed."

The reference to the use of free transportation by employees' families to enable them to move with their household goods from place to place is a reference to those situations which may arise when railroad employees are compelled to move their places of abode from one division head to another as happens when employees are transferred. Assume that an employee traveling on a pass was injured in an accident caused by the carrier's negligence while moving his family from Newark to Pittsburg because he had been transferred from one division to another. Would the majority hold that such a trip was not an incident of his employment by the carrier which partook of the character of his work as a whole?

It should be observed also that in the memorial addressed by the Brotherhoods to the President of the Senate passes to employees' families were considered by the Legislative Representative to have been issued on substantially the same basis as the passes to the employees themselves.

[11] In the Lockwood case, 17 Wall. at page 359, 21 L.Ed. 627, Mr. Justice Bradley stated, "It may be assumed in limine, that the case was one of carriage for hire; for though the pass certifies that the plaintiff was entitled to pass free, yet his passage was one of the mutual terms of the arrangement for carrying his cattle. The question is, therefore, distinctly raised, whether a railroad company carrying passengers for hire, can lawfully stipulate not to be answerable for their own or their servants' negligence in reference to such carriage."

at common law the provisions of the pass would free the defendant of liability for its negligence.

The difficulties which the majority opinion imposes upon carriers and employees of carriers to determine whether a pass as used by an employee is gratuitous or free, whether it is used to travel to or from work, or for the employee's own purposes, or for a combination of both, are very great; the tests which the majority opinion lay down, vague and uncertain. Moreover, the employee or his personal representative is not permitted to bring suit under the remedial federal act and despite the fact that the employee has been injured or killed while engaged in a journey incident to his employment in interstate commerce, recovery may be barred on the ground of contributory negligence.